State Board of Pharmacy, Respondent, *v.* Gardiner D.
Matthews et al., Appellants.

Public Health Law — courts may take judicial notice of articles
   included in definition of term "medicines" as used in the stat-
   ute — legislature has power to regulate sale of drugs, although
   not poisonous — constitutionality of provisions permitting sale
   of poisonous domestic remedies by general merchants in
   unincorporated villages.

In an action for penalties under the provisions of the Public Health Law
   in relation to Pharmacy (L. 1900, ch. 667; Cons. Laws, ch. 45), it was
   shown that an unlicensed person sold tincture of iodine, tincture of
   arnica and spirits of camphor.  *Held,* that the courts may take judicial
   notice of the fact that all these articles come within the term "medi-
   cines," as used in section 200 of the said law, which prohibits the sale,
   under penalties, of "medicines or poisons," except in the presence or
   under the supervision of a licensed pharmacist.
It is proper that the regulations concerning the sale of drugs and medi-
   cines should not be confined to poisons, but may be extended so as to
   embrace what are known as harmless household remedies; that is, what
   may be harmless if properly prepared.  The police power logically
   extends to such medicines no less than to poisons and other lethal medici-
   nal agents, and the provisions of sections 194, 199, 200 and 201 of the
   Public Health Law, relating to pharmacy, are constitutional.
The provision of the said law which expressly permits the sale of
   certain known poisonous domestic remedies by merchants or traders in
   unincorporated villages or villages of the fourth class, provided their
   places of business be more than three miles distant from a drug store,
   is neither arbitrary nor unreasonable.
*State Board of Pharmacy* v. *Matthews,* 122 App. Div. 889, affirmed.

(Argued November 29, 1909; decided January 25, 1910.)

Appeal, by permission, from an order of the Appellate
Division of the Supreme Court in the first judicial depart-
ment, entered November 8, 1907, which affirmed a deter-
mination of the Appellate Term reversing a judgment in
favor of defendants entered upon a decision of the Municipal
Court of the city of New York, and directed final judgment
in favor of plaintiff.

23

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edmond E. Wise* for appellants.   There is no proof that tincture of iodine, tincture of arnica and spirits of camphor are not within the exceptions established by the statute, or that they are medicines within the meaning of the term as used in section 200, which prohibits the sale of "medicines or poisons" except in the presence of a licensed pharmacist. (*Burks* v. *Bosso,* 180 N. Y. 344; *Bell* v. *Mayor, etc., of N. Y.,* 105 N. Y. 139; *People* v. *Fisher,* 83 Ill. App. 114.) An interpretation of the statute prohibiting the free sale of the articles in question, or similar articles, would make it unconstitutional. (*Matter of Jacobs,* 98 N. Y. 98; *Wright* v. *Hart,* 182 N. Y. 330; *People* v. *Hawkins,* 157 N. Y. 1; *People ex rel. S. P. Co.* v. *Edgcomb,* 112 App. Div. 604; *Schnaier* v. *N. H. Co.,* 182 N. Y. 83; *Hennington* v. *State of Georgia,* 163 U. S. 299; *Lawton* v. *Steele,* 152 U. S. 133; *Stuart* v. *Palmer,* 74 N. Y. 183; *People* v. *E. T. Co.,* 96 N. Y. 387; *Rockwell* v. *Nearing,* 35 N. Y. 302; *Fisher Co.* v. *Woods,* 187 N. Y. 90; *People* v. *Murphy,* 195 N. Y. 126; *People* v. *O. C. R. C. Co.,* 175 N. Y. 84; *People* v. *Gibson,* 109 N. Y. 389; *Health Dept.* v. *Rector,* 145 N. Y. 32.)

*Hieronimous A. Herold* and *Samuel Mendelson* for respondent.   The articles in question are medicines, sold by a clerk without the presence or personal supervision of a licensed pharmacist.   Defendant, therefore, is liable. (*People* v. *Abraham,* 16 App. Div. 60; *People* v. *Rontey,* 21 N. Y. S. R. 173; *Suffolk Co.* v. *Shaw,* 21 App. Div. 146.)   The statute in question is constitutional. (*People* v. *Budd,* 117 N. Y. 14; *People ex rel. Nechamcus* v. *Warden, etc.,* 144 N. Y. 532.)

WILLARD BARTLETT, J.   This action was instituted in the Municipal Court of the city of New York and was brought to recover three penalties under the Pharmacy Law (L. 1900,

chap. 667.) The pleadings were oral. The appeal book recites that the plaintiff brought the action "for penalties under Chapter 667, Laws of 1900, sections 194, 199, 200 and 201, and the said defendant answered as follows: General denial; demand bill particulars."

The bill of particulars discloses the precise character of the plaintiff's claim. It specifies three causes of action: (1) That on March 5th, 1906, Florence Smith, a person not licensed by the plaintiff to sell drugs or medicines, sold tincture of iodine, a medicine and poison; (2) that on the same date, the same person, not being licensed to do so, sold at defendants' store in Fulton street in the borough of Brooklyn, tincture of arnica; and (3) that on the same date, at the defendants' store in the same locality, Florence Smith, an unlicensed person, sold a medicine, to wit, spirits of camphor.

The plaintiff further specified $25 as the penalty which it was entitled to recover for each of these several infractions of the Pharmacy Law, making $75 in all. There was a final allegation in the bill of particulars to the effect that the said Florence Smith was not a person licensed by the plaintiff to sell drugs, medicines or poisons, and that the sale was not made in the presence or under the supervision of a licensed pharmacist or druggist in the employ of the defendant.

All the allegations of the bill of particulars were clearly established by the proof upon the trial. It appeared that the defendants conducted a large department store in the borough of Brooklyn including a pharmacy in charge of a duly licensed pharmacist. This pharmacist, however, was not present at the time of the sales in question which were made by an unlicensed saleswoman. The chemist of the state board of pharmacy testified that all of the articles sold, namely, tincture of iodine, spirits of camphor and tincture of arnica, were medicines and that tincture of iodine was a poison. The judgment of the Municipal Court was in favor of defendants. That judgment was reversed by the Appellate Term. On appeal to the Appellate Division that court affirmed the determination of the Appellate Term and

directed judgment absolute in favor of plaintiff.   In attacking that judgment counsel for the appellants presents two questions for our consideration : (1) Are the articles involved, tincture of iodine, tincture of arnica and spirits of camphor, when sold in sealed bottles, within the exceptions of the statute, or do they come within the term " medicines," as used in section 200 of the Laws of 1900, chapter 667 (the Pharmacy Law), which prohibits the sale, under penalties, of " medicines or posions " except in the presence and under the supervision of a licensed pharmacist ?   (2) If the articles .in question are medicines within the prohibition of section 200 of the Pharmacy Law, is that portion of the statute which restricts the sale of domestic remedies, or other perfectly harmless preparations, to licensed pharmacists a valid exercise of the police power, or is it an invasion of private rights and unconstitutional ?

As to the first question I think that the courts may take judicial notice of the fact that tincture of iodine, spirits of camphor and tincture of arnica are medicines ; and so far as tincture of iodine is concerned the uncontroverted evidence in the case proves that it is a poison.   It is true that spirits of camphor and tincture of arnica are commonly known as domestic remedies, but this fact does not lessen their medicinal character.   It is obvious that the same precautionary regulations may not be required in respect to the sale of medicines which are harmless if pure and properly used, as would be appropriate in respect to the sale of poisonous substances; but I can see no reason why if the police power embraces the regulation of the sale of medicines of a dangerous character it may not also legitimately be extended over the sale of medicines generally, if only in order to insure their purity.

We thus come to the second question as to whether legislation is constitutional which restricts not merely the sale of poisons, but the sale of domestic remedies or perfectly harmless medicinal preparations.

While the constitutional validity of a statute regulating

and restricting the sale of drugs and medicines does not appear to have been directly involved in any case heretofore passed upon by this court, the authority of the legislature to control and limit the sale of drugs and medicines has long been judicially recognized in this state.

In *People* v. *Rontey* (4 N. Y. Supp. 235 ; affirmed on opinion below, 117 N. Y. 624) the defendant was convicted for having unlawfully conducted a pharmacy in the city of New York, not being a registered pharmacist as required by the New York City Consolidation Act of 1882. The judgment of conviction was affirmed by the General Term of the Supreme Court in an opinion by Mr. Justice BRADY, which was adopted by this court when the case came here as a correct exposition of the law. In speaking of the nature of the statute Mr. Justice BRADY said it was a police regulation designed to insure greater safety to the people in requiring that drugs could be dispensed only by experienced persons. " Public safety must be regarded as superior to any private rights," he said, " and the defendant's business must yield to the necessities recognized by proper legislation." In *People* v. *Abraham* (16 App. Div. 58) the defendants were convicted of having retailed medicines in violation of the prohibition of a statute making it unlawful for any person except a registered pharmacist to open or conduct any pharmacy except under the immediate supervision of a registered pharmacist. The judgment of conviction was affirmed by the Appellate Division, but the opinion does not indicate that the constitutionality of the statute was questioned. Many other New York cases could be cited where language is used in the opinions clearly assuming the existence of the legislative power, which is denied by counsel for the appellants upon his appeal.

The constitutionality of such legislation is affirmed by the leading text writers and it has been upheld by the courts of last resort in numerous other states in the Union. " The sale of poisonous drugs unless labeled " is among the acts enumerated by Chief Justice Cooley in his work on Constitutional Limitations as subject to be forbidden by a state in the exer-

cise of the police power. (Cooley's Constitutional Limitations [7th ed.], p. 881.) Mr. Tiedeman in his treatise on State and Federal Control of Persons and Property (Vol. 1, p. 512) says that safeguards of every kind can be thrown around the sale of poisonous drugs so that damage will not be sustained from an improper use thereof.

A few of the leading cases may be cited which uphold the doctrine thus asserted. An Oregon statute forbidding the sale or gift of opium to any one but a druggist or practicing physician except upon the prescription of a practicing physi- cian was upheld in *Ex parte Yung Jon* (28 Fed. Rep. 309) by the District Court of the United States for the district of Oregon (DEADY, J.). A similar statute was sustained as constitutional in *State of Nevada* v. *Ah Chew* (16 Nev. 50), where this language was used: "Under the police power, recognized in the theory and asserted in the practice of every state in the Union, in the interest of good morals, the good order and peace of society, for the prevention of crime, misery and want, the legislature has authority to place such restric- tions upon the sale or disposal of opium as will mitigate if not suppress its evils to society." In *Ex parte Mon Luck* (29 Oregon, 421) the Supreme Court of Oregon held that a statute was constitutional which went so far as to make it a criminal offense to have possession of opium without having a license therefor or without having obtained it on the pre- scription of a physician or pharmacist for medicinal purposes. "The sale and disposition of such a drug," said the court, "may unquestionably be regulated and controlled by law, and whether its nature and character is such that for the protection of the public its possession by unauthorized persons should be. prohibited is a question of fact and of public policy, which belongs to the legislative department to determine." In *State* v. *Forcier* (65 N. H. 42) it was held that the enactment of a statute requiring retailers of drugs, medicines and chemicals to submit to examination and procure a license was a sanitary regulation within the police power of the state. "Undoubtedly the legislature has the right, under the police power, to pass

enactments for the benefit and promotion of the public health." (*Noel* v. *People*, 187 Ill. 587, 593.)   In the same case it was held that the provisions of the Illinois Pharmacy Act of 1895 in so far as they prohibited persons not being registered pharmacists from retailing or dispensing medicines prepared or compounded by themselves were valid as a proper exercise of the police power in the interest of the public health.   A Wisconsin statute imposed a penalty upon any person not being a registered pharmacist or not having a registered pharmacist in his employ who should keep a pharmacy store or shop for retailing, compounding or dispensing medicines.   The real purpose of the law was declared to be " to prevent any drugs, medicines, or poisons from being put up and sold in such store or shop, except by or under the supervision of a person of the requisite qualifications."   The Supreme Court of Wisconsin held that it was within the power of the legislature thus to protect the health and lives of citizens throughout the state from improper, dangerous and destructive compounds put up by incompetent or inefficient persons.   It is to be noted that this Wisconsin statute related not merely to the sale of poisons, but to the sale of drugs and medicines generally so that it included harmless medicines as well as those of a dangerous character.   (*State* v. *Heinemann*, 80 Wis. 253.)

As has already been suggested, there are strong reasons relative to the public welfare which make it proper that regulations concerning the sale of drugs and medicines should not be confined to poisons, but may be extended so as to embrace what are known as harmless household remedies — that is, which may be harmless if properly prepared.   The injury to the public health which might ensue if such medicines were carelessly or ignorantly compounded so as to contain deleterious ingredients or deceptively, so as to be something different from what they purported to be, is manifest.   The police power logically extends to such medicines no less than to poisons and other lethal medicinal agents.

It is suggested that the Pharmacy Law (for which the existing Public Health Law, chap. 45 of the Consolidated

Laws, has now been substituted) is objectionable because it expressly permits the sale of certain known poisonous domestic remedies by merchants or traders in unincorporated villages or villages of the fourth class, provided their places of business be more than three miles distant from a drug store. In answer to this objection it is only necessary to refer to a Minnesota case in which a similar question was raised. (*State* v. *Donaldson*, 41 Minn. 74.) The Minnesota Pharmacy Act of 1885 contained a general prohibition forbidding any person not a registered pharmacist to retail, compound or dispense medicines, followed by a proviso that nothing contained in the statute should prevent shopkeepers whose place of business was more than one mile from a drug or apothecary shop from dealing in and selling the commonly-used medicines and poisons, if such medicines and poisons had been put up by a registered pharmacist. This one-mile limit in the proviso was attacked as an arbitrary distinction, unwarranted by reason and not demanded by any necessity. The Supreme Court of Minnesota dealt with the objection as follows: " Doubtless, the use of impure medicines or dangerous drugs is just as injurious to those who buy them one mile from a drug store as to those who buy them within that distance; and, if this was the only thing to be taken into the account, the discrimination would be purely arbitrary. But the legislature had to deal with this as a practical question, and had a right to take into consideration the convenience of the public. In sparsely-settled districts, frequently there is no pharmacy or drug store near at hand. In case of sickness it is often absolutely necessary to obtain medicinal remedies promptly, in order to save life. The question was, how far was it practicable to protect the public from the sale of impure or dangerous medicines and drugs, and at the same time have due regard to the convenience of those living at a distance from a drug store? To meet the requirements of the situation, the legislature made an exception so as to allow shopkeepers whose place of business is more than a mile from a drug or apothecary shop to deal in and sell the commonly used medicines and poisons, if

put up by a registered pharmacist; thereby protecting the public, especially in the centers of population where they most need it, as far as practically consistent with the convenience or necessities of those living in the rural districts. We do not think that such a distinction is either arbitrary or unreasonable."

We entertain no doubt as to the constitutionality of the provisions of the Pharmacy Law under which the penalties in this case were recovered against the defendants and as no other question is raised it follows that the order appealed from must be affirmed.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, HISCOCK and CHASE, JJ., concur.

Order affirmed, with costs.