The State v. Lillard Foutch and The State v. Burnell Lester.*

(*Nashville*, December Term, 1926.)

Opinion filed June 25, 1927.

1. STATE BOARD OF PHARMACY. Act 1919, ch. 162.

Provision is made for a State Board of Pharmacy, regulating the practice of Pharmacy and sale of poisons. (Post, p. 478-9.)

2. SAME. Same. Construction of sections 1 and 4.

Under section 1, in the larger communities articles may be dispensed or sold under the supervision of a registered Pharmacist. Under section 4, in smaller communities articles may be dispensed, or sold made by a Drug Dealer, approved by the Board, under restrictions adopted by it. Held a valid enactment, merely providing different agencies to give effect to the legislative will. (Post, p. 480.)

Citing and distinguishing: State ex rel. Grantham v. City of Memphis, 151 Tenn., 6; State v. Donaldson, 41 Minn., 74; State Board of Pharmacy v. Matthews, 197 N. Y., 353, 26 L. R. A. (N. S.), 1013; State ex rel. v. Evans, 122 Tenn., 184; State Highway Dept. v. Mitchell Heir's, 142 Tenn., 58; C. N. O. and T. P. Ry. Co. v. State, 148 Tenn., 127; 12 C. J., 847.

Note: Mr. Justice Cook thinks Section 4, an invalid delegation of legislative power, incapable of elision, which renders the act unconstitutional. (Post, p. 485.)

3. SAME. Same. State police power.

The State under its police power, may regulate the sale of drugs, poisons and medicines, in the interest of the public health. (Post, p. 479.)

*On constitutionality, construction and effect of statute prohibiting or regulating the sale of poisons, see annotation in 30 L. R. A. (N. S.), 519; 9 R. C. L., 699; 2 R. C. L. Supp., 857; 4 R. C. L. Supp., 619.

Citing: Cooley Const. Lien, 7 Ed. (88); Tiedman on State and Federal Control of Persons and Property, vol. 1, p. 512; 9 R. C. L., 697; Note 30 L. R. A. (N. S.), 519; State Board of Pharmacy v. Matthews, 197 N. Y., 353; 26 L. R. A. (N. S.), 1013.

4. **STATUTES. Enactment. Motive of Legislature. Police power.** The courts will assume that the Legislature intended to conserve the public health and safety, (e. g.) by committing the conduct of the drug business to persons of competence and skill, and that no ulterior motive was present. (Post, p. 484-5.)

*Headnotes 1. Constitutional Law, 12 C. J., section 896; Druggists, 19 C. J., section 5; 2. Statutes, 36 Cyc., p. 997; 3. Constitutional Law, 12 C. J., sections 330, 334. Druggists, 19 C. J., section 4; 4. Druggists, 19 C. J., sections 4, 5.

---

FROM DAVIDSON.

---

Appeal from Criminal Court of Davidson County — Part 1.—HON. CHESTER K. HART, Judge.

L. D. SMITH, Attorney-General and ALFRED HUME, for State.

W. C. CHERRY, for defendants in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

An indictment was returned against defendant Lillard Foutch in which it was charged that he unlawfully did permit the selling and dispensing of poisons, to-wit, tincture of iodine, in his Pharmacy or retail drug store, by an unlicensed person and without the presence of and under the immediate personal supervision of a pharmacist or assistant pharmacist.

An indictment was returned against defendant Burnell Lester in which it was charged that he did unlawfully prepare, or dispense or sell a certain poison, to-wit, tincture of iodine, and at that time the said Burnell Lester was not a licensed person to sell such poisons, nor was he acting under the immediate personal supervision of a pharmacist or assistant pharmacist.

The trial judge sustained a motion to quash in each case and in each case the State appealed in error to this court. The two cases were heard together here.

The indictments were found under Chapter 162 of the Acts of 1919, regulating the practice of Pharmacy and sale of poisons. The indictment against defendant Foutch follows the language of Sub-section 3, of Section 20 of the Act, and the indictment against defendant Lester follows the language of Sub-section 2, of Section 20 of the Act. Tincture of iodine is enumerated as a poison in schedule B, under Section 18 of the Act. Each indictment, therefore, clearly states a case under the Statute, and the trial judge no doubt sustained the motions to quash on account of the constitutional objections made to the Statute.

Chapter 162 of the Acts of 1919 is too lengthy to be set out. It is entitled "An Act to establish a State Board of pharmacists, and assistant pharmacists, and for the and sale of poisons, and to repeal" certain Acts to which apt reference is made. Provision is made for a State Board of Pharmacy, for the examination and licensing of Pharmacists, and Assistant Pharmacists, and for the selection by the Board of Pharmacy of Drug Dealers in rural communities of the State.

Section 1 enacts that it shall be unlawful for any person, not a registered pharmacist, to conduct any pharmacy or retail drug store as proprietor, unless he shall

employ and place in charge of such pharmacy or retail drug store, a registered pharmacist who shall have supervision of that part of the business requiring a pharmaceutical skill and knowledge, and that it shall be unlawful to engage in the occupation of compounding or dispensing medicines or prescriptions of physicians, dentists or veterinarians, or to sell at retail for medical purposes any drugs, chemicals, poisons, or pharmaceutical preparations within the State until compliance with the provisions of the Act. This section then excepts from its provisions the sale of a list of drugs enumerated.

Section 4 of the Act provides that the Board of Pharmacy may in its discretion issue a permit to persons, to be known as Drug Dealers, to engage in the business of retailing drugs, chemicals or medicinal preparations, upon the prescriptions of physicians in small towns or rural districts in the State having a population of 500 inhabitants or under, in which the conditions in the judgment of the Board do not justify the employment of a registered pharmacist, and such permits authorize the persons named therein to carry on such business in such small towns or rural districts, under such regulations and restrictions as the Board may adopt.

As heretofore stated, tincture of iodine is named as a poison in schedule B. of Section 18, which it is unlawful for one to sell or allow to be sold in his place of business, except under the restrictions of the Statute.

It cannot be denied that the State, under its police power, may regulate the sale of drugs, poisons and medicines in the interest of the public health. Cooley's Const. Lim. (7 Ed.), p. 88; 1 Tiedman on State & Federal Control of Persons and Property, p. 512, 9 R. C. L., 697, Note 30 L. R. A. (N. S.), 519. Although a number of Statutes of this character have been heretofore enacted in

Tennessee, the power of the State to promulgate such laws generally has not been questioned, nor do we understand that any such question is made in these cases.

The purpose of the Statute before us is to regulate the dispensing of medicines and poisons through a Board of Pharmacy and the instrumentalities of that Board. Under Section 1, in the larger communities, medicines and poisons within the Act may be dispensed and sold only under the supervision of a registered pharmacist. Under Section 4, in the smaller communities, medicines and poisons within the Act may be dispensed and sold by a Drug Dealer approved by the Board under restrictions adopted by the Board.

The first objection urged against the Statute is that it "makes the same thing criminal in one part of the State —that is, in cities—and makes it innocent and unpenalized in small villages and localities."

This seems to us a misapprehension. The Act undertakes to regulate the dispensing and sale of medicines and poisons throughout the entire State. It merely provides different agencies for this purpose in the more populous communities and in the rural communities. registered pharmacists are the agents to be employed in the former localities, Drug Dealers are the agents to be employed in the latter localities.

The case does not fall within the authority of *State ex rel. Grantham* v. *City of Memphis,* 151 Tenn., 6. The Statute there considered undertook to regulate the plumbing business in cities of more than twenty-five thousand inhabitants, and no regulation of this business whatever was attempted in less populous towns or cities. The court was of opinion that there was no reason for such regulation in towns of a population of twenty-five thousand which did not apply with equal force to a town of

twenty-four thousand, and that the legislation was accordingly discriminatory and invalid.

As heretofore seen, however, Chapter 162 of the Acts of 1919, is subject to no such objection. It covers the entire State. The State holds its elections, enforces its criminal laws, and otherwise functions in the larger communities through agencies and officers different from those employed for the same purposes in the smaller communities—each agency or officer best adapted to the community in which he is placed. To deny the authority of the State so to proceed would involve the denial of the entire doctrine of legislative classification upon a population basis.

A Minnesota Statute similar to the one before us permitted shop keepers whose place of business was more than one mile from a drug or apothecary shop to sell commonly used medicines and poisons if such medicines and poisons had been put up by a registered pharmacist. This provision was attacked as an arbitrary and unreasonable distinction, but the Minnesota Court said:

"Doubtless, the use of impure medicines or dangerous drugs is just as injurious to those who buy them 1 mile from a drug store as to those who buy them within that distance; and if this was the only things to be taken into the account, the discrimination would be purely arbitrary. But the Legislature had to deal with this as a practical question, and had a right to take into consideration the convenience of the public. In sparsely settled districts, frequently there is no pharmacy or drug store near at hand. In case of sickness it is often absolutely necessary to obtain medicinal remedies promptly, in order to save life. The question was, how far was it practicable to protect the public from the sale of impure or dangerous medicines and drugs, and at the same time

have due regard to the convenience of those living at a distance from a drug store? To meet the requirements of the situation, the Legislature made an exception so as to allow shopkeepers whose place of business is more than a mile from a drug or apothecary shop to deal in and sell the commonly used medicines and poisons, if put up by a registered pharmacist; thereby protecting the public, especially in the centers of population, where they most need it, as far as practically consistent with the convenience or necessities of those living in rural districts. We do not think that such a distinction is either arbitrary or unreasonable." *State* v. *Donaldson,* 41 Minn,. 74.

A New York Pharmacy law, similar to ours, permitted the sale of certain known poisonous domestic remedies by merchants or traders in unincorporated villages, or villages of the fourth class, provided their places of business were more than three miles distant from a drug store. Tre Court of Appeals of New York sustained the validity of this provision and quoted and expressly approved the language of the Minnesota Court just above set out. *State Board of Pharmacy* v. *Matthews,* 197 N. Y., 353, 26 L. R. A. (N. S.), 1013.

It is next insisted that Chapter 162 of the Acts of 1919, is unconstitutional "because it delegates the legislative power to the Pharmacy Board, even in these small localities to determine which and what persons may, without penalty, sell iodine, without a registered pharmacist present.

We do not think there is present in the Act an unwarranted delegation of legislative authority. The Act merely authorizes the Board of Pharmacy to give effect to the legislative will of locating Drug Dealers in communities of a population of 500 inhabitants or under in which con-

dition do not justify the employment of Registered Pharmacists. The policy or rule was established by the Statcute, and the selection of the particular communities is a matter of detail.

The Legislature did not desire to make drugs and medicines inaccessible to rural sections of the State. It was intended to authorize the sale and dispensation of drugs and medicines through Drug Dealers in communities remote from a registered pharmacist and too small to sustain one. To aid in the execution of this purpose, the Legislature created the Board of Pharmacy—an administrative agency—to determine within limits the communities in which Drug Dealers might be licensed. Such legislation is common and is not objectionable, the powers delegated to be reasonably exercised.

The principle is illustrated in *State ex rel.* v. *Evans,* 122 Tenn., 184. Chapter 54 of the Acts of 1895 provided that every County Superintendent of Schools should be a person of literary and scientific attainments and of skill in the theory and practice of teaching. It further provided for an examination of candidates for the office of County Superintendent before a commission appointed by the Chairman of the County Court. The examination was to be held in accordance with the rules adopted by the State Board of Education and no candidate was eligible for the office of County Superintendent, unless he passed such examination. It was urged upon the court that such legislation conferred upon the State Board of Education, as a matter of fact, the right to prescribe the qualification of public officers—a function of the Legislature. This argument, however, was rejected by the court and it was held proper for the Legislature to ordain an administrative agency to aid in the legislative purpose

of securing only persons of literary and scientific attainments as County Superintendents of Schools.

On the same principle, in pursuance of its plan to secure an effective and harmonious system of highways, the Legislature has delegated to the Highway Department the power to locate the various sections of the system. This power has been sustained by this court. *State Highway Department* v. *Mitchell's Heirs*, 142 Tenn., 58.

So, the Railroad Commission has been authorized to say at what points depots shall be located. *Cincinnati, N. O. & T. P. R. Co.* v. *State*, 148 Tenn., 127.

Illustrations of this character are too numerous to be pursued. See 12 C. J., 847, et seq., where many cases are collected.

It is finally urged that the Act is palpably arbitrary and beyond possible justice because "(a) it is manifest that upon its face that it is not to preserve public health, but to create a trade guild and trust, and (b) it is dealing with an article which when sold in the original package in no way menaces or affects the public health."

The criticism (a) impugns the good faith of the Legislature and we cannot consider such an argument. We must assume that the Legislature intended to conserve the public health and safety by committing the conduct of the drug business to persons of competence and skill, and that no ulterior motive was present.

The point of criticism (b) seems to be that it is beyond the power of the Legislature, even as a police measure, to regulate the sale of a useful household remedy such as iodine. A similar objection was made to a New York Statute. In reply thereto, the Court of Appeals said:

"As has already been suggested, there are strong reasons relative to the public welfare which make it proper

that regulations concerning the sale of drugs and medicines should not be confined to poisons, but. may be extended so as to embrace what are known as harmless household remedies—that is, which may be harmless if properly prepared. The injury to the public health which might ensue if such medicines were carelessly or ignorantly compounded so as to contain deleterious ingredients, or deceptively, so as to be something different from what they purported to be, is manifest. The police power logically extends to such medicines no less than to poisons and other lethal medicinal agents. *State Board of Pharmacy* v. *Matthews,* 197 N. Y., 353, 26 L. R. A. (N. S.), 1013.

Other objections made to Chapter 162 of the Acts of 1919 involve the construction of the Statute, rather than its validity and the questions so raised are not properly before us at this time.

The judgments below in each of the cases will be reversed. Remand for further proceedings.

MR. JUSTICE COOK thinks Section 4 an invalid delegation of legislative power, incapable of elision, which renders the Act unconstitutional.