[Crim. No. 3164. In Bank.—February 15, 1929.]

In the Matter of the Application of WILLIAM W. GRAY for Writ of Habeas Corpus.

J. M. Inman and P. G. West for Petitioner.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, and Neil Cunningham, Deputy Attorney-General, for Respondent.

Bruce Philip, *Amicus Curiae*, for Respondent.

THE COURT.—Petitioner was taken into custody under a warrant of arrest issued out of the justice's court of Sacramento township, charging him with the commission of a misdemeanor, to wit, violation of an act regulating the practice of pharmacy. (Stats. 1905, chap. 406, p. 535, and amendments thereto.) The complaint on which the warrant issued charged petitioner more specifically with having dispensed certain household drugs, to wit, tincture of arnica, spirits of camphor, almond oil, distilled extract witch-hazel, syrup of ipecac, syrup of rhubarb, hive syrup, sweet spirits of nitre, tincture of iron, saltpeter, Rochelle salts, senna leaves, carbonate of magnesia, seidlitz powders, quinine, cathartic pills, chamomile flowers, caraway seed, chlorate of potash, moth balls, plasters, salves, ointments, peroxide of hydrogen, gum camphor, blue ointment, asafetida, saffron, anise seed and Epsom salts (in less than ten-pound quantities), contrary to sections 13 and 16 of the act.

In this proceeding it is petitioner's contention that said sections 13 and 16 are unconstitutional and void, as granting special privileges and denying the equal protection of the law in a manner not reasonably intended to protect the public health, and therefore violative of sections 11 and 21 of article I and section 25 of article IV of the state constitution and the fourteenth amendment of the federal constitution.

Petitioner concedes it to be established that, for the preservation of public health and safety, the state may regulate and place proper restrictions upon the practice of pharmacy, and may prescribe qualifications to be possessed by those engaged in that profession, and that in the exercise of its police power it may also regulate the manufacture, compounding and sale of drugs, medicines and poisons, where such regulation in any way reasonably tends to protect the public health, safety or morals. He insists, however, and rightly so, that any such regulation must be of a reasonable nature and calculated in some way to promote such protection. This brings us to a consideration of the pertinent provisions of the act.

Section 13 (as amended by Stats. 1909, p. 1015, sec. 4) reads: "Any proprietor of a pharmacy who shall fail, or neglect to place in charge of such pharmacy a registered

pharmacist, or any proprietor who shall, by himself or any other person, permit the compounding of prescriptions, or the vending of drugs, medicines, or poisons, in his or her store, or place of business, except by or in the presence and under the direct, immediate and personal supervision of a registered pharmacist, or any person not being a registered pharmacist, who shall take charge of, or act as manager of any pharmacy, or store, or who, not being a registered pharmacist, retails, compounds, or dispenses drugs, medicines, or poisons, shall be guilty of a misdemeanor, . . . "

Section 16 (as amended by Stats. 1927, p. 1140) is as follows: "The Board of Pharmacy shall issue a permit to general dealers in rural districts in which the conditions, in their judgment, do not justify the employment of a registered pharmacist, and where the store of such general dealer is not less than three miles distant from the store of a registered pharmacist; which said permit shall authorize the person or firm named therein to sell in such locality, but not elsewhere, and under such restrictions and regulations as said board may from time to time adopt, the following simple household remedies and drugs, in such manner and form as may be hereafter authorized by said board, as follows, to wit:

"Tincture of arnica, spirits of camphor, almond oil, distilled extract witch-hazel, syrup of ipecac, syrup of rhubarb, hive syrup, sweet spirits of nitre, tincture of iron, Epsom salts, Rochelle salts, senna leaves, carbonate of magnesia, seidlitz powders, quinine, cathartic pills, chamomile flowers, caraway seed, chlorate of potash, moth balls, plasters, salves, ointments, peroxide of hydrogen, gum camphor, blue ointment, asafetida, saffron, anise seed and saltpeter, and such other remedies or drugs as the board may from time to time designate.

"The board shall charge an annual fee of five dollars in advance for such permit, and it shall be unlawful for any dealer to sell any drugs or ordinary household remedies without complying with the requirements of this section. Whenever a registered pharmacist shall establish a pharmacy within three miles by the shortest road from the place of business of such dealer, no further license shall be granted, and the license already issued shall be void; provided, that

the following drugs, medicines and chemicals may be sold by grocers and dealers generally without restriction, viz.:

"Glauber salts, vaseline, turpentine, condition powders, cream of tartar, carbonate of soda, bay rum, essence of Jamaica ginger, essence of peppermint, ammonia, alum, castor oil, bicarbonate of soda, chloride of lime, glycerine, witchhazel, sheep dip, borax, sulphur, bluestone, copperas, flaxseed, insect powder, fly-paper, ant poison, squirrel poison, gopher poison, and poultry vermifuge; and arsenical poisons used for orchard spraying, when prepared and sold only in original and unbroken packages and labeled with the official poison labels; provided, that this act shall not prevent the sale of Epsom salts in original packages of not less than ten pounds when plainly and properly labeled 'For live stock only and not for medicinal purposes' in letters not less than one-half inch in height."

Gray is not a registered pharmacist, and his place of business is less than three miles distant from the store of a registered pharmacist. Section 12 (as amended by Stats. 1907, p. 768, sec. 4) provides that the act is without application to "registered, trademarked or copyrighted proprietary medicines," and section 11 declares that every proprietor or manager of a pharmacy or drug-store is responsible for the quality of all drugs, chemicals and medicines sold or dispensed by him "except those sold in the original package of the manufacturer and except those articles or preparations known as patent or proprietary medicines."

Petitioner cites *State* v. *Childs*, 32 Ariz. 222 [54 A. L. R. 736, 257 Pac. 366], in which a statute containing provisions substantially identical with the foregoing sections of the California act was declared unconstitutional in so far as it attempted or purported to restrict to registered pharmacists the sale of patent or proprietary medicines or medicines sold in the original package of the manufacturer. It was there held that the sale of such patent or proprietary medicine or medicines sold in the original package of the manufacturer did not require the exercise of expert skill and, in the absence of responsibility on the seller's part to the buying public, afforded no particular protection or safeguard to the public health. The Arizona court based its conclusion,

in the main, on the reasoning of *State* v. *Donaldson,* 41 Minn. 74 [42 N. W. 781], also relied on by petitioner.

While there is much that is persuasive in the reasoning of these decisions, we are not prepared to follow them and declare unconstitutional the provisions of our pharmacy statute requiring, with one exception not here involved, all sales of original package medicines, other than patent or proprietary medicines which are expressly excepted from the operation of the act, to be made by or in the presence and under the direct and immediate supervision of a registered pharmacist. ■ A police regulation for the protection of the public health will be sustained if, by any fair construction, it has a tendency to effect its object. ■ All of the authorities recognize that the state has as much right to regulate the sale of domestic remedies in the original package of the manufacturer as it has to regulate the sale of any other kinds of medicines and remedies. The mere fact that such medicines and remedies are usually put in sealed packages or containers, with directions as to their use, should not alone be sufficient to remove them from the realm of regulation. A person purchasing such original package medicines might well rely, as it was intended he should rely, upon such directions and administer the medicine accordingly; and, while the directions upon any particular original package medicine might be, and probably are, correct and safe, medicines of a dangerous character might be put up and sold in the same manner, with directions not safe, and not approved by a pharmacist, and thus the statutory province of the pharmacist be usurped to the detriment of the public. It is our opinion, therefore, that the legislature, in the exercise of its police power, may properly and reasonably confine and restrict the sale of original package medicines, other than patent or proprietary medicines which are expressly declared to be without the operation of the act, to registered pharmacists.

In *State* v. *Zotalis,* 172 Minn. 132 [214 N. W. 766], decided long after *State* v. *Donaldson, supra,* the defendant, who conducted a confectionery store, was convicted of illegally selling aspirin. In affirming the judgment of conviction the court declared: ''The statute should be sustained if enacted with reasonable reference to public health or welfare. If intended merely to give a monopoly to pharmacists

or druggists by restricting sales to them it is not sustainable. It is only sustainable as a police measure.

"The legislature thought that the dangers incident to its sale justified regulation and that a reservation of sales to pharmacists or to those under their supervision was effective. It is true that no technical skill is required in making a sale. This does not prove the statute invalid. As remarked by the trial court, the pharmacist knows where to procure a pure and genuine article and his prescribing physicians will require him to furnish a pure drug.

"It is not questioned that the sale of drugs, medicines and poisons may be regulated in the exercise of the police power. *State* v. *Donaldson,* 41 Minn. 74 [42 N. W. 781] ; . . . The restriction of the sale of aspirin as provided by the statute is within the legislative discretion. . . . " Other authorities sustaining the right of the legislature to restrict the sale of original package medicines and so-called harmless household remedies to registered pharmacists, are: *State Board of Pharmacy* v. *Matthews,* 197 N. Y. 353 [26 L. R. A. (N. S.) 1013, 90 N. E. 966] ; *People* v. *Abraham,* 16 App. Div. 58 [44 N. Y. Supp. 1077] ; *State* v. *Foutch,* 155 Tenn. 476 [54 A. L. R. 725, 295 S. W. 469, 471] ; *Board of Pharmacy* v. *Abrammoff,* 6 N. J. Misc. Rep. 437 [141 Atl. 587].

Provisions similar to section 16 of our act, wherein the board of pharmacy is authorized in its discretion to issue permits to general dealers in rural districts, where the store of such general dealer is not less than three miles distant from the store of a registered pharmacist, to sell certain so-called simple household remedies and drugs, have been repeatedly upheld. (*State* v. *Foutch, supra,* p. 470 of 295 S. W. (155 Tenn. 476) ; *State Board of Pharmacy* v. *Matthews, supra,* pp. 968, 969 of 90 N. E. (197 N. Y. 353) ; *State* v. *Donaldson, supra,* p. 782 of 42 N. W. (41 Minn. 74) ; *State* v. *Zotalis, supra,* p. 767 of 214 N. W. (172 Minn. 132.) In *State* v. *Donaldson, supra,* it is held: "Doubtless, the use of impure medicines or dangerous drugs is just as injurious to those who buy them one mile from a drug store as to those who buy them within that distance; and, if this was the only thing to be taken into the account, the discrimination would be purely arbitrary. But the legislature had to deal with this as a practical question, and had a right

to take into consideration the convenience of the public. In sparsely settled districts, frequently, there is no pharmacy or drug store near at hand. In case of sickness it is often absolutely necessary to obtain medicinal remedies promptly, in order to save life. The question was, how far was it practicable to protect the public from the sale of impure or dangerous medicines and drugs and at the same time have due regard to the convenience of those living at distance from a drug store? To meet the requirements of the situation the legislature made an exception so as to allow shopkeepers whose place of business is more than a mile from a drug or apothecary shop to deal in and sell the commonly used medicines and poisons, if put up by a registered pharmacist; thereby protecting the public, especially in the centers of population, where they most need it, as far as practically consistent with the convenience and necessities of those living in rural districts. We do not think that such a distinction is either arbitrary or unreasonable.''

The writ is discharged and the petitioner remanded.