STATE v. F. W. WOOLWORTH COMPANY.[1]

July 17, 1931.

No. 28,452.

[1]Reported in 237 N. W. 817.

*Ware & Melvin,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Neil M. Cronin,* City Attorney, and *Palmer B. Rasmusson,* Assistant City Attorney, for the state.

OLSEN, J.

Appeal by defendant from a judgment of the municipal court of the city of Minneapolis finding it guilty of a violation of G. S. 1923 (1 Mason, 1927) § 5814, by selling at its retail store in said city a bottle of medicine without having a licensed pharmacist in charge of such sales or employed in said store.

Section 5814 is a part of the pharmacy law of this state, now G. S. 1923 (1 Mason, 1927) §§ 5797-5816, inclusive. Section 5805 defines drugs, medicines, and poisons, for the purposes of the law, as "all substances commonly kept in drug stores and used in compounding medicines or sold for medicinal purposes." It excepts from the law physicians compounding their own prescriptions or furnishing articles to their patients, and any exclusively wholesale business, and provides that any dealer whose shop is more than two miles from any drug store may sell commonly used medicines or poisons which have been put up for such sale by a registered pharmacist. It further provides that the law shall not interfere with the making or vending of proprietary medicines or with the sale by general retail dealers of some 24 named substances.

Section 5808 contains a general list of poisons and provides that no sale thereof shall be made without making a record thereof in a book kept for that purpose by the seller, stating the name and address of the buyer.

Section 5813 provides that every proprietor or manager of a place where drugs are sold shall be responsible for the quality of all drugs, chemicals, and medicines sold by him, except proprietary medicines and other articles sold in the original packages of the manufacturers.

Section 5814 provides:

"No person not a registered pharmacist or a dealer employing and keeping such a pharmacist in active charge of his place of business,

shall retail, compound or dispense drugs, medicines, or poisons, or keep' or conduct a place for retailing, compounding, or dispensing drugs, medicines, or poisons."

■ Defendant corporation operates a retail general store in the city of Minneapolis. It has no licensed pharmacist employed or in charge of sales of drugs or medicines. It kept in stock and sold a preparation known as milk of magnesia. The preparation was manufactured by Sykes-Rigney Company of Philadelphia. It was sold in the original four-ounce bottles in which it came from the manufacturer. Each bottle was closed by a sealing cap and had upon it a label on which appeared in large letters the words "Milk of Magnesia" followed by the initials "U. S. P." indicating that it was prepared in accordance with the formula contained in the United States Pharmacopoeia, a standard work giving the formulas and ingredients of drugs and medicines. The label further contained general directions for use of the medicine and had the name of the manufacturer at the bottom thereof.

The evidence showed that milk of magnesia is a medicine and used generally internally to correct overacidity of the stomach and bowels and as a laxative. It is used also as a mouth wash and sometimes as a lotion for the face. It is used only for medicinal or hygienic purposes. It is made and distributed by many manufacturers of drugs and medicines. It is frequently prescribed by physicians, either on written prescription or by oral direction. It is also frequently called for and sold to people without a doctor's prescription or direction. It is not poisonous and, when properly prepared, is a harmless household remedy. There is no secret about its manufacture or ingredients.

Defendant contends that the preparation was a proprietary medicine or should be so considered. One of the manufacturers testified that in his opinion their process of manufacturing was distinctive from the process generally used; that they used a special machine and process, which was a trade secret; that they used a few more grains of magnesium hydrate than the minimum required by the U. S. P. formula; and that their product was purer than the

ordinary milk of magnesia. We find nothing in this evidence to show that the preparation was a proprietary medicine. It had no distinctive name. It was labeled as a U. S. P. preparation and came well within the formula contained in that treatise. Any manufacturer could make exactly the same preparation under the U. S. P. formula. No distinction is pointed out between this and other milk of magnesia generally sold, except the very general statements of this witness. We may hazard the observation that the other manufacturers would make, in general terms, the same or similar claims for their products.

Defendant relies on the case of Ferguson v. Arthur, 117 U. S. 482, 6 S. Ct. 861, 29 L. ed. 979. That case arose under the customs laws of the United States. The law provided that medicinal preparations and compounds recommended to the public as proprietary medicines, or prepared according to some private formula or secret art as remedies or specifics for any disease or diseases affecting the human or animal body, should pay a duty of 50 per cent ad valorem. The question was whether a preparation imported from England known as "Henry's Calcined Magnesia" was a preparation so recommended to the public.

The court [117 U. S. 487] quoted the dictionary definitions of "proprietary" as follows: "Belonging to ownership; as, proprietary rights; belonging, or pertaining, to a proprietor; relating to a certain owner or proprietor." "Proprietor" is defined as "one who has the legal right or exclusive title to anything * * *; an owner."

The preparation was distributed and sold as "Henry's Calcined Magnesia." The name was a trade-mark. The preparation had been made and distributed by the same family for a hundred years. It was well known to the trade under that name and had a peculiar value and reputation, under that name, in the market. It possessed characteristics distinct from ordinary calcined magnesia. It did not appear that it was prepared according to any pharmacopoeia formula. Each bottle was labeled with the trade-mark name, in which the makers claimed property rights. Each bottle bore a

British and an American proprietary medicine revenue stamp. The court held that the preparation was recommended to the public as a proprietary medicine and was dutiable.

An interesting discussion of what is a proprietary medicine is found in State ex rel. Missildine v. Jewett Market Co. 209 Iowa, 567, 228 N. W. 288.

We conclude that the milk of magnesia here in question was not a proprietary medicine.

■ Should a harmless household remedy, not a proprietary medicine, be held excepted from the pharmacy law? The case of State v. Donaldson, 41 Minn. 74, 42 N. W. 781, holds the contrary. The beef, iron, and wine preparation there considered, as shown in the statement of facts, was prepared by a skilled manufacturer of medicines. It was not a drug or poison, was wholly harmless, was in very extensive use as a medicine, and commonly purchased and used independently of any physician's prescription or order. It was clearly a harmless household remedy but not a patent or proprietary medicine. The court held that it came within the law and that its sale was restricted to pharmacists or dealers having a pharmacist in charge. The Donaldson case, 41 Minn. 74, 42 N. W. 781, has been cited with approval in later decisions of this court. We are aware that the case has been cited and the reasoning therein quoted to sustain decisions both for and against the effect and validity of pharmacy laws, similar to our own, in a number of states; but we think there can be no fair doubt as to what that case holds on the question now being considered.

Stress is laid upon the provisions of § 5813, excepting druggists from liability for the quality of drugs and medicines sold in original packages of the manufacturers. This milk of magnesia was so sold. But the examination of the quality of medicines sold is not the sole purpose of having a pharmacist in charge. Many poisonous drugs and medicines may be sold in original packages. The pharmacist knows what drugs are poisonous. He is required to keep a record of sales of numerous poisonous preparations. If attentive to his duties, he will in some degree guard against mistakes and

misuse. He must in the first instance determine whether an article called for is a poison requiring registry of the sale. He should know whether an article sold is a standard preparation made according to the U. S. P. formula or an adulterated and harmful preparation. If he knowingly sells an adulterated and harmful preparation, we do not believe he would be protected by the fact that it was sold in the original package. As said in State v. Zotalis, 172 Minn. 132, 133, 214 N. W. 766: "The pharmacist knows where to procure a pure and genuine article." It is there also stated that the fact that no technical skill is required in selling a drug or medicine in an original package does not prove the law invalid. What was there sold was aspirin tablets in an original package. The court held that it was a drug or medicine within the statute, and therefore, not being a proprietary or patent medicine, the law restricting sales of drugs, medicines, and poisons applied. The case of State Board of Pharmacy v. Matthews, 197 N. Y. 353, 90 N. E. 966, 26 L.R.A.(N.S.) 1013, decides this same question in that state.

The case of State v. Hanchette, 88 Kan. 864, 129 P. 1184, involved a sale of hydrogen peroxide. That article was found to have no effect as a medicine and to be used only as a cleansing agent, to cleanse and sooth the skin and remove impurities from wounds, ulcers, mouth, teeth, and ears. It was held not commonly called a medicine and not a medicine within the meaning of the statute.

We find no good reason for departing from the Donaldson case, 41 Minn. 74, 42 N. W. 781, and hold that a harmless household remedy, not a patent or proprietary medicine, sold and used solely or principally as a medicine, comes within the pharmacy law restricting the sale of drugs, medicines, and poisons.

The remaining question is whether the statute is constitutional or whether it is unconstitutional if held to apply to harmless household medicines sold in the original packages of the manufacturers.

Laws not materially different from our pharmacy statute have been sustained in other states against diverse objections. As cov-

ering the objections now made and others, the following may be cited: In re Gray, 206 Cal. 497, 274 P. 974; State v. Kumpfcrt, 115 La. 950, 40 So. 365; People v. Abraham, 16 App. Div. 58, 44 N. Y. S. 1077; State Board of Pharmacy v. Matthews, 197 N. Y. 353, 90 N. E. 966, 26 L.R.A.(N.S.) 1013; People v. Roemer, 168 App. Div. 377, 153 N. Y. S. 323; State v. Foutch, 155 Tenn. 476, 295 S. W. 469, 54 A. L. R. 725; State v. Heinemann, 80 Wis. 253, 49 N. W. 818, 27 A. S. R. 34.

Cases holding such laws invalid on various grounds are State v. Childs, 32 Ariz. 222, 257 P. 366, 54 A. L. R. 736; Noel v. People, 187 Ill. 587, 58 N. E. 616, 52 L. R. A. 287, 79 A. S. R. 238; State v. Geest, 118 Neb. 562, 225 N. W. 709; State v. Wood, 51 S. D. 485, 215 N. W. 487, 54 A. L. R. 719. Of these cases State v. Childs, 32 Ariz. 222, 257 P. 366, 54 A. L. R. 736, is most nearly in point here against the validity of the law. The California court, in the case of In re Gray, 206 Cal. 497, 274 P. 974, analyzes the Childs case and declines to follow it.

The constitutionality of the statute as to various points has been before this court in State v. Donaldson, 41 Minn. 74, 42 N. W. 781; State v. Hovorka, 100 Minn. 249, 110 N. W. 870, 8 L.R.A.(N.S.) 1272, 10 Ann. Cas. 398; Minnesota State Phar. Assn. v. State Board of Pharmacy, 103 Minn. 21, 114 N. W. 245; and State v. Zotalis, 172 Minn. 132, 214 N. W. 766. It has been sustained in each case. It is urged that the point that, if held to apply to the sale of harmless medicines in original packages, the law is so arbitrary and without any benefit to public health as to be an unwarranted discrimination and restraint against the general sale of such an article of merchandise, has not been decided by our prior decisions. The question has already been to some extent considered and we need not repeat. That such a law, as applied to harmless medicines sold in original packages, is valid has been held by a number of cases already cited. It should be sustained if it has any reasonable tendency or effect to protect public health or welfare. To a large extent that is a question for the legislature. We are not prepared to say that having a licensed pharmacist in charge of the

sale of medicines, even if harmless and sold in original packages, has no reasonable relation to public health and cannot be of public benefit. The legislature might reasonably conclude that restrictions of such sales would be of public benefit as a health regulation, and we should not invade its province. The well known rule governing this court is that a law should not be declared unconstitutional unless its invalidity clearly appears; or, as said in some cases, unless it is shown beyond a reasonable doubt to be in violation of some constitutional provision.

It is also our interpretation of the Donaldson [41 Minn. 74] and Zotalis [172 Minn. 132] cases that they hold that where a preparation is a medicine prepared, sold, and used solely or principally as a medicine, and is not a patent or proprietary medicine, then its sale comes within the law and is restricted to sales by or under the supervision of a licensed pharmacist; that the fact that it is a harmless or household medicine does not except it from the law; and that as so applied these cases hold the law valid.

Judgment affirmed.