STATE, RESPONDENT, *v.* STEPHENS, APPELLANT.

(No. 7,541.)

(Submitted May 18, 1936. Decided May 28, 1936.)

[59 Pac. (2d) 54.]

*Mr. H. L. Myers,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Enor K. Matson,* Assistant Attorney General, for the State, submitted a brief; *Mr. Matson* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Defendant was found guilty of a misdemeanor and has appealed to this court from the judgment of conviction. He was a retail grocer in the city of Billings, and was charged with selling an original package of aspirin without having a license so to do and not being a physician, wholesale dealer, or registered pharmacist, or having a registered pharmacist in charge of his store.

The amended complaint alleges the violation of section 3170, Revised Codes 1921, and Chapter 104 of the Laws of 1931. The facts are not in dispute. It was stipulated in the district court between counsel for the respective parties that the cause was tried entirely upon the question of the constitutionality of sections 3170 and 3181 of the Revised Codes of 1921 and Chapter 104 of the Laws of 1931. The trial court held these statutes constitutional, found the defendant guilty, and imposed a fine of $10. By appropriate specifications of error it is sought to review the ruling of the trial court holding these statutory provisions to be constitutional. It is the contention of the defendant that these Acts operate to deprive him of his property without due process of law in violation of the Fifth and Fourteenth Amendments to the Federal Constitution, and section 27, Article III, of our state Constitution. As we understand the arguments of counsel, it is conceded that in order to sustain these enactments it must appear that they are a valid exercise of the police power of the state which must in some manner tend to promote or preserve public health.

Section 3170 provides: "It shall hereafter be unlawful for any person other than a registered pharmacist, as hereinafter defined, to retail, vend, compound, or dispense drugs, medicines, poisons, chemicals, or pharmaceutical preparations, in the state of Montana, or to institute, conduct, or manage a store, shop, pharmacy, or institution for the selling, vending,

compounding, or dispensing of drugs, medicines, poisons, chemicals, or pharmaceutical preparations in the state of Montana, unless such be a registered pharmacist as in this Act provided, or unless a registered pharmacist is placed in charge of such store, pharmacy, shop, or institution for the retailing, vending, compounding, or dispensing of drugs, medicines, poisons, chemicals, and pharmaceutical preparations."

The pertinent part of section 3181 reads as follows: "Any proprietor of a pharmacy, or any other person who shall permit the compounding or dispensing of physicians' prescriptions, or the vending of drugs, medicines, poisons, chemicals, or pharmaceutical preparations in his store or place of business, except by a registered pharmacist, in the meaning of this Act, or under the immediate supervision of a registered pharmacist, * * * shall, for each and every offense, be liable to a fine of not less than twenty-five dollars nor more than two hundred and fifty dollars; provided, that nothing in this Act shall interfere with the keeping, distributing, or handling of drugs, acids, or poisons by merchants or corporations, for use in their business, when kept in original and plainly labeled packages; provided, also, that nothing in this Act shall interfere with any physician in his regular practice, nor with the wholesale business of any dealers, nor with the business of merchants in towns where there is no regularly licensed pharmacist when selling drugs, medicines, pharmaceutical, or proprietary medicinal preparations in original and plainly labeled packages, as the public may require; provided, also, that nothing herein shall be construed to prevent the sale of any patent or proprietary medicine in the original package, when plainly labeled, nor such non-medicinal articles as are usually sold by general merchants."

We also deem it important in the consideration of this case to notice the provisions of the first sentence of section 3184, which declares: "The proprietors of all pharmacies will be held responsible for the quality of all drugs, medicines, and chemicals sold or dispensed at their respective places of busi-

ness, except patent and proprietary preparations, and articles sold in the original packages of the manufacturer.''

Chapter 104 of the Laws of 1931 declares it to be unlawful for any person to sell or vend drugs, medicines and remedies as provided for under Chapter 227 of the Revised Codes of 1921 (which includes sections 3170, 3181 and 3184), unless such person has secured a license from the state. This Act excludes physicians, in their practice, wholesale dealers as such, and the distributing, keeping or handling of drugs, acids or poisons by merchants or corporations for use in their own business when kept in the original plainly labeled package. Another section of the same Act provides that a license shall not be required for the sale of patent or proprietary medicines, fungicides, insecticides and germicides for agricultural or horticultural uses, or sold in original packages or containers.

It was testified at the trial that aspirin is a drug, which was not denied, and is usually held to be a medicine not proprietary or patent within the meaning of similar Acts. (*State ex rel. Missildine* v. *Jewett Market Co.,* 209 Iowa, 567, 228 N. W. 288.)

In some jurisdictions similar Acts have been upheld as being constitutional; in others, they have been declared unconstitutional. In most of the Acts which have been upheld, a list of simple and harmless drugs and remedies are usually excluded from the provisions of the Act by name. No such exceptions appear in our Act. However, none of the courts in upholding the constitutionality of these Acts have in any manner stressed these specific exceptions as a reason for their conclusions.

All of the decisions agree that enactments licensing druggists and prohibiting the sale of drugs and medicines which are compounded by the vendor or sold in any other manner than in the original package of the manufacturer by others than licensed pharmacists or under their control are properly within the realm of the police power of the state. The diversity of opinion arises among the decisions as to such Acts with reference to patent or proprietary medicines and drugs sold in the

original package of the manufacturer. We shall first review the decisions upholding the constitutionality of such Acts as apply to the two classes of drugs and medicines enumerated supra.

In the case of *State Board of Pharmacy* v. *Matthews*, 197 N. Y. 353, 90 N. E. 966, 968, 26 L. R. A. (n. s.) 1013, an unlicensed person had sold tincture of iodine, tincture of arnica, and spirits of camphor. The court in upholding the constitutionality of the Act, and thereby sustaining a conviction of an unlicensed person who had sold these drugs or medicines, recorded its reasons for so doing in the following language: "As has already been suggested, there are strong reasons relative to the public welfare which make it proper that regulations concerning the sale of drugs and medicines should not be confined to poisons, but may be extended so as to embrace what are known as harmless household remedies— that is, which may be harmless if properly prepared. The injury to the public health which might ensue if such medicines were carelessly or ignorantly compounded so as to contain deleterious ingredients or deceptively, so as to be something different from what they purported to be, is manifest. The police power logically extends to such medicines no less than to poisons and other lethal medicinal agents."

The Tennessee supreme court, in the case of *State* v. *Foutch*, 155 Tenn. 476, 295 S. W. 469, 54 A. L. R. 725, sustained the constitutionality of their Pharmacy Act and the conviction of an unlicensed person for the sale of tincture of iodine, basing its conclusion largely upon the New York case cited supra; it quoted with approval the above excerpt from that case, and gave no additional reason to sustain its conclusion.

In the case of *In re Gray*, 206 Cal. 497, 274 Pac. 974, 976, the defendant was convicted of the sale of a number of ordinary drugs, in violation of the provisions of a similar Act. The reasoning of the court as written in its decision is as follows: "The mere fact that such medicines and remedies are usually put in sealed packages or containers, with directions as

to their use, should not alone be sufficient to remove them from the realm of regulation. A person purchasing such original package medicines might well rely, as it was intended he should rely, upon such directions and administer the medicine accordingly; and, while the directions upon any particular original package medicine might be, and probably are, correct and safe, medicines of a dangerous character might be put up and sold in the same manner, with directions not safe, and not approved by a pharmacist, and thus the statutory province of the pharmacist be usurped to the detriment of the public.''

The Minnesota court, in the case of *State* v. *Zotalis,* 172 Minn. 132, 214 N. W. 766, sustained a conviction for the sale of aspirin and upheld the constitutionality of the law. Its reasons for the result as set forth in the opinion are as follows: ''The legislature. thought that the dangers incident to its sale justified regulation and that a restriction of sales to pharmacists or to those under their supervision was effective. It is true that no technical skill is required in making a sale. This does not prove the statute invalid. As remarked by the trial court, the pharmacist knows where to procure a pure and genuine article and his prescribing physicians will require him to furnish a pure drug.'' The same court affirmed the conviction of one for the sale of a bottle of milk of magnesia, in the case of *State* v. *F. W. Woolworth Co.,* 184 Minn. 51, 237 N. W. 817, 75 A. L. R. 1202, on the authority of the *Zotalis · Case.*

We shall now give consideration to the various decisions under similar Acts, as applied either to proprietary or patent medicines or drugs sold in original packages plainly labeled, as received from the manufacturer, holding, as to these classes of drugs and medicines, that such Acts are unconstitutional.

In the case of *Noel* v. *People,* 187 Ill. 587, 58 N. E. 616, 618, 79 Am. St. Rep. 238, 52 L. R. A. 287, involving patent and proprietary medicines, the court said: ''The vice of the present Pharmacy Act is that it gives to the registered pharmacists the exclusive privilege of selling these patent and proprietary

medicines and remedies, and excludes all other persons from doing so, while at the same time it makes no requirement of such registered pharmacists that they make any analysis, inspection or examination of the same. In this regard the Act gives to registered pharmacists a monopoly of the business of selling patent medicines, without in any manner protecting the public health. The public health is not protected by limiting these sales to registered pharmacists, who make no examination of what they sell.''

The supreme court of South Dakota, in a case involving likewise a proprietary medicine, *State* v. *Wood,* 51 S. D. 485, 215 N. W. 487, 488, 54 A. L. R. 719, said of such an Act and the arguments in support thereof: ''The vital question is: Will this Act accomplish what is claimed for it? Both the briefs of appellant and of the *amicus curiae* seem to assume that restricting the sale of such medicines to registered pharmacists will protect the public from all the ills that might result from unrestricted sale. But they do not point out how the public are protected. It is suggested that a pharmacist, to obtain his license, must be of good moral character, and that would protect the public from verbal misbranding, fraud, and dangerous medicines; but why restrict the sale to pharmacists only, when there are many other men of good moral character? If moral character is a sufficient guaranty, the statute might require vendors to be men of good moral character; but there can be no reason for requiring them to be druggists. Again, it is urged that pharmacy is a profession with a code of ethics; but pharmacy is not the only profession with a code of ethics. It is argued that pharmacists have knowledge of the effect of medicines they sell; this is no doubt some protection against accidental injury resulting from ignorance, but it is not plain that pharmacists do know the ingredients of patent and proprietary medicines, or that they are required to use or possess any knowledge in making a sale of such medicines. If one has a doctor's prescription filled at a drug store, he buys not the medicine alone, but the druggist's knowledge and skill in

dispensing it; but if he were to buy Watkins' Pain-Oleum at the drug store, what more would he buy than if he bought elsewhere? Certainly neither knowledge nor skill, unless the druggist is bound to know the ingredients and their effects upon the human system, and to warn a purchaser, if there be any danger in its use. * * * The learning required, which makes the occupation a profession, pertains to the preparation of the medicines, and not to the naked act of selling. The selling is only one of the several acts of a pharmacist, as an intermediary between the physician and the public, and is incidental to the more important act of dispensing medicine, requiring peculiar knowledge. If the sale of patent and proprietary medicines is properly to be classed as the practice of pharmacy, then it should be confined to pharmacists, subject to the control and regulations of the profession, with criminal and civil liability in case of malpractice. It does not seem that merely selling an article, though that article be medicine, can be classed as the practice of a learned profession. It would seem that the practice of a profession ought to call in use the learning peculiar to the profession. * * * Appellant suggests that the ethics of the profession would be a protection to the public health; that a pharmacist, having knowledge of the harmful effect of certain drugs, would voluntarily warn the public, where others would not know, or care, so long as a profit on a sale could be made. Perhaps knowledge might be some protection; but, where the legislature has not seen fit to require that the composition and effect of such medicines be known and such knowledge used in the protection of the public health, the possible benefits that may result from the knowledge are conjectural and cannot receive much consideration. It would seem to be an unreasonable exercise of the police power to limit sales to the profession, without requiring anything of the profession to safeguard the public health. * * * No knowledge of their ingredients is required. We find nothing which requires druggists to warn the public against any danger in their use, or to assume any responsibility in their

sale, or to do anything to protect the public in return for intrusting to them the sale of such medicines.   *   *   *   If the druggist does know the ingredients, he is not required to use such knowledge and need not be of any assistance; if he does not know them, he cannot be of any assistance.''

To the same effect where similar laws are held unconstitutional are the following cases: *State* v. *Childs,* 32 Ariz. 222, 257 Pac. 366, 54 A. L. R. 736, 737, and *State* v. *Geest,* 118 Neb. 562, 225 N. W. 709.

To us the reasoning of the decisions upholding similar Acts is strained and amounts to little more than the broad statement to the effect, either that in some manner not expressed in the opinions these Acts will tend to protect and preserve the public health, or that because of the superior knowledge possessed by druggists they will procure a better quality of drugs.   These arguments are to us far from convincing.

Our statute, section 3184, supra, provides that, where drugs are sold in the manufacturer's original package, the druggist or pharmacist is relieved of all responsibility for the quality and purity of the drugs or medicines.   In view of this statutory provision, we think the reasoning of the decisions holding such Acts to be unconstitutional is unanswerable, and that none of the decisions upholding such Acts, have indeed attempted to reply to the force, effect and reasoning of these decisions.

Taking into consideration the fact that the law absolves druggists and pharmacists from all responsibility as to the purity, strength and quality of drugs or medicines which are sold in the manufacturer's original packages, no justifiable reason exists for arriving at the conclusion that to limit the sale of such articles exclusively to druggists and pharmacists can in any way tend to protect or preserve the public health. Therefore, as to drugs and medicines which are sold in the manufacturer's original packages, and the sale of which is not specifically prohibited by some other statute not mentioned in this opinion, we hold that the Acts are not a valid exercise of the police power, and hence are unconstitutional.

Accordingly, it is ordered that the judgment be reversed and the cause remanded, with direction to dismiss the complaint.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied July 3, 1936.