STATE, Appellant, v. WOOD, Respondent.

(215 N. W. 487.)

(File No. 6331.   Opinion filed October 11, 1927.)

1.  **Druggists—Pharmacy Act Includes Patent and Proprietary Medicines.**

    Rev. Code 1919, § 7743, restricting to registered pharmacists right to retail, compound, or dispense drugs, medicines, or poisons, includes patent and proprietary medicines.

2.  **Constitutional Law—Police Power Cannot Be Exercised in Violation of State or National Constitutions.**

    While the exercise of the police power extends to regulations promoting public health, morals, safety, convenience, and general welfare, it cannot be exercised in violation of provisions of the state or national Constitutions.

3.  **Constitutional Law—Police Power Cannot Interfere with Private Enterprise, where the Object Sought Has No Reasonable Relation to the Means Employed.**

    The police power cannot be exercised in such manner that there is an unwarranted interference with the business of a citizen, where the object sought has no reasonable relation to the means employed to effect that object.

4.  **Druggists—Regulation of Practice of "Pharmacy" Is Legitimate Exercise of Police Power.**

    The regulation of the practice of "pharmacy," including retailing, compounding, and dispensing drugs, medicines, and poisons, is a legitimate exercise of the police power.

5.  **Druggists—Patent and Proprietary Medicines Are Subject to Police Regulations.**

    The regulation of the sale of patent and proprietary medicines is a legitimate exercise of the police power.

6.  **Constitutional Law—Druggists—Statute Restricting to Pharmacists Right to Sell Drugs, Medicines and Poisons Held Un-**

constitutional as to Patent and Proprietary Medicines (Rev.
Code 1919, § 7743; Const. U. S. Amend. 14; Const. S. D. art.
6, §§ 2, 18).

Rev. Code 1919, § 7743, providing that it shall be unlawful
for any. person other than a registered pharmacist to retail,
compound, or dispense drugs, medicines, or poisons, held un-
constitutional, under Const. U. S. Amend. 14, and Const. S. D.
art. 6, § 2, 18, as to patent and proprietary medicines, since
there were no regulations of sales by pharmacists, and the act
would merely give that class an exclusive right to make un-
regulated sales.

7.    Health—Police Regulation to Protect Health Will Be Sustained,
      if It Has Any Tendency to Effect Object.

A police regulation for the protection of the public health
will be sustained, if by any fair construction it has a tendency
to effect its object.

---

Note.—See, Headnote (1), American Key-Numbered Digest, Drug-
gists, Key-No. 2, 19 C. J. Sec. 12; (2) Constitutional Law, Key-No.
81, 12 C. J. Sec. 440; (3) Key-No. 81, 12 C. J. Sec. 431; (4), (5)
Druggists, Key-No. 1, 19 C. J. Secs. 4, 5; (6) Constitutional law,
Key-No. 240(1), Druggists, Key-No. 2, 19 C. J. Sec. 5; (7) Health,
Key-No. 21, Constitutional law, 12 C. J. Sec. 441.

On validity and effect of statute prohibiting or regulating the
sale of patent medicine, see annotation in 30 L. R. A. (N. S.) 520;
9 R. C. L. 700.

Police power as embracing regulation of sale of patent medi-
cine, see annotation in 1 A. L. R. 1476; 9 R. C. L. 701; 2 R. C. L.
Supp. 858.

Appeal from Municipal Court of Mitchell; HON. W. M. HER-
BERT, Judge.

P. E. Wood was charged in a criminal complaint with un-
lawfully, wrongfully, and willfully selling certain drugs and medi-
cines, not being a registered pharmacist or physician at the time.
From a judgment dismissing the action, the State appeals. Af-
firmed.

*Frank W. Mitchell,* State's Attorney, of Mitchell, *Buell F.
Jones,* Attorney General, and *H. A. Linstrom,* Assistant Attorney
General, for the State.

*H. G. Giddings,* of Mitchell, for Respondent.

BURCH, J. Defendant, P. E. Wood, on the 15th of May,
1926, was charged in a criminal complaint with unlawfully, wrong-
fully, and willfully selling "at retail to one Wood Smith, certain

drugs and medicines, the same being patented and proprietary medicines, to wit:

"One bottle of Watkins' Lax-Tone and one bottle of Watkins' Pain-Oleum, contained in original package, as put up by the manufacturer; said P. E. Wood at the time of said sale not being a registered pharmacist under the laws of the state of South Dakota, and said P. E. Wood at the time of said sale not being a registered physician under the laws of the state of South Dakota."

The defendant demurred to the complaint upon the grounds that the complaint does not substantially conform to the requirements of the Code of Criminal Procedure; that it charges more than one offense, and more than one offense in one count or division thereof; that it does not describe a public offense, and the facts stated therein do not constitute a public offense. The demurrer was sustained, and the state appeals from a judgment dismissing the action.

While the defendant insists upon all the grounds of demurrer, there are but two that merit consideration, namely, that the complaint does not describe a public offense, and that the facts stated do not constitute a public offense. It is the contention of respondent that the act under which the complaint is framed does not include within its meaning patent and proprietary medicines, or if the act is intended to and does include such medicines, that in so far as such medicines are included the act is unconstitutional and void.

[1] The section under which the complaint was framed is section 7743, R. C. 1919. The portion of said section material to the issues of the case reads:

"It shall be unlawful for any person other than a registered pharmacist to retail, compound or dispense drugs, medicines or poisons, * * * except as herein provided. * * *"

The exceptions refer to registered physicians, and have no application to the issue involved in this case; otherwise, there are no exceptions. The statute is too plain to leave room for construction. It cannot be said that the act does not include patent and proprietary medicines. If the demurrer can be sustained, it must be on the ground that, so far as the act does include and apply to patent and proprietary medicines as applied to them, it is unconstitutional. Respondent claims that the law, so far as it

includes patent and proprietary medicines, is an unreasonable exercise of the police power, and violates that portion of the Fourteenth Amendment to the Constitution of the United States providing:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws;"

section 2, art. 6, a similar provision of the state Constitution; and section 18, art. 6, of the state Constitution, providing:

"No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

[2, 3] It has been said that the police power is "one of the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government" (Dist. of Columbia v. Brooke, 214 U. S. 138, 29 S. Ct. 560, 53 L. Ed. 941), and the only limit to its exercise in the enactment of laws is that they shall violate no provisions of the state and national Constitutions (State v. Moore, 104 N. C. 714, 10 S. E. 143, 17 Am. St. Rep. 696). But, while it extends to regulations promoting public health, morals, safety, convenience, and general welfare, it has its limits and must stop when it encounters the prohibitions of the Constitution. Eubank v. City of Richmond, 226 U. S. 137, 32 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192. There can be no unwarranted interference with the business of a citizen, or his right to own and sell property under the guise of the police power, where the object sought has no reasonable relation to the means employed to effect the object. Unquestionably the object sought, namely, the protection of the public health and general welfare (if that be the real object), is a worthy one, and if the means employed, namely, restricting the sale of such medicines to pharmacists, is adapted to protect the public health and welfare, then the act is constitutional; otherwise, it is not.

[4, 5] It is universally held that the regulation of the practice of pharmacy is a legitimate exercise of the police power. It is generally conceded that the practice of pharmacy includes retailing, compounding, and dispensing drugs, medicines, and poisons, and it

is not denied by the decisions that patent and proprietary medicines are subject to police regulations. In State v. Donaldson, 41 Minn. 74, 42 N. W. 781-783, a leading case, largely relied upon by respondent to support his contention, the court said:

"Undoubtedly the state has as much right to regulate the sale of patent medicines as any other, and in the exercise of that power may adopt any measures they see fit, provided only that they adopt such as would have some tendency to accomplish the desired end, to wit, the protection of the lives and health of the public."

In Noel v. People, 187 Ill. 587-593, 58 N. E. 616-618 (52 L. R. A. 287, 79 Am. St. Rep. 238) the court said:

"It is unquestionably true that the state has as much right to regulate the sale of patent and proprietary medicines and domestic remedies as it has to regulate the sale of any other kinds of medicines and remedies."

That such is the law is self-evident and needs no argument.

W. F. Michel, on behalf of the State Board of Pharmacy and the South Dakota Pharmaceutical Association, filed a brief in this case as amicus curiæ, and his brief has received very careful consideration, with the briefs of the parties. He points out that the provision of the Pure Food and Drug Act prohibiting written misbranding has been sustained, and says the statute in question is intended to prevent verbal misbranding. He points out that many patent medicines contain dangerous and poisonous ingredients, and asks whether a purchaser should be sold a dangerous drug simply because he asks for it. He says it is necessary, for the protection of the public health and to protect the public against fraud, that the goods be handled by some one who understands their properties, and says that the modern view and tendency is to recognize that the public are entitled to protection. This may all be conceded. And it is not a particularly modern view that the public is entitled to protection in health, against fraud, misbranding of goods, and the unregulated sale of dangerous and poisonous medicines. This principle is old, and it is well established that the state may protect the public by wholesome and effective laws. No argument is necessary to induce this court to uphold any valid exercise of the police power of the state so protecting the public.

The vital question is: Will this act accomplish what is claimed for it? Both the briefs of appellant and of the amicus curiæ seem

to assume that restricting the sale of such medicines to registered pharmacists will protect the public from all the ills that might result from unrestricted sale. But they do not point out how the public are protected. It is suggested that a pharmacist, to obtain his license, must be of good moral character, and that would protect the public from verbal misbranding, fraud, and dangerous medicines; but why restrict the sale to pharmacists only, when there are many other men of good moral character? If moral character is a sufficient guaranty, the statute might require vendors to be men of good moral character; but there can be no reason for requiring them to be druggists. Again, it is urged that pharmacy is a profession with a code of ethics; but pharmacy is not the only profession with a code of ethics. It is argued that pharmacists have knowledge of the effect of medicines they sell; this is no doubt some protection against accidental injury resulting from ignorance, but it is not plain that pharmacists do know the ingredients of patent and proprietary medicines, or that they are required to use or possess any knowledge in making a sale of such medicines. If one has a doctor's prescription filled at a drug store, he buys not the medicine alone, but the druggist's knowledge and skill in dispensing it; but if he were to buy Watkins' Pain-Oleum at the drug store, what more would he buy than if he bought elsewhere? Certainly neither knowledge nor skill, unless the druggist is bound to know the ingredients and their effects upon the human system, and to warn a purchaser, if there be any danger in its use.

[6] Unless the sale of such medicines by pharmacists is regulated, then requiring such sales to be made by pharmacists does not regulate their sale, but merely gives to a class the exclusive right to make unregulated sales of such medicines. Unlimited and unregulated sales by pharmacists may be just as extensive and quite as harmful as unlimited sales by others. Are pharmacists controlled and regulated by law in the sale of such medicines, where others are not? If so, and the regulations are sufficiently strict to afford real protection to the public, then this law may be sustained.

Respondent admits that the practice of pharmacy is a profession. As a profession it is regulated, controlled, and licensed. The right to regulate, control, and license those practicing the profes-

sion is conceded; the need of doing so results from the character
of the business.    It includes compounding and dispensing medi-
cines, which requires learning and skill.    If it were no more than
the mere sale of medicines, it is not clear that a license could be
required, unless as a means to regulate the sales, and, where no
learning or skill was required, that learning and skill could be
made one of the requirements for obtaining the license.    The
learning required, which makes the occupation a profession, per-
tains to the preparation of the medicines, and not to the naked
act of selling.    The selling is only one of the several acts of a
pharmacist, as an intermediary between the physician and the pub-
lic, and is incidental to the more important act of dispensing
medicine, requiring peculiar knowledge.    If the sale of patent and
proprietary medicines is properly to be classed as the practice of
pharmacy, then it should be confined to pharmacists, subject to the
control and regulations of the profession, with criminal and civil
liability in case of malpractice.    It does not seem that merely sell-
ing an article, though that article be medicine, can be classed as
the practice of a learned profession.    It would seem that the
practice of a profession ought to call in use the learning peculiar
to the profession.

The practical operation of the law restricting the sale of drugs
and medicines compounded and dispensed by local pharmacists to
sale by a pharmacist results in practically all of such sales being
made by the one who compounds or dispenses them.    Thus he
knows their contents, strength, and purity, and is responsible for
their effect, under the ethics and regulations of his profession.    In
the practical operation of the law the public is protected, by con-
fining the sale to those having actual first-hand information.    In
the sale of patent medicine, no sale is likely to be made by the
pharmacist who compounded the medicine.    In the practical opera-
tion of the law, nothing is gained by the restriction of such sale
to pharmacists, if they are in no way required to exrcise any
knowledge or skill, or to protect the public in any way by refusing
to sell where harm will result.

Appellant suggests that the ethics of the profession would
be a protection to the public health; that a pharmacist, having
knowledge of the harmful effect of certain drugs, would volun-
tarily warn the public, where others would not know, or care, so

long as a profit on a sale could be made. Perhaps knowledge might be some protection; but, where the Legislature has not seen fit to require that the composition and effect of such medicines be known and such knowledge used in the protection of the public health, the possible benefits that may result from the knowledge are conjectural and cannot receive much consideration. It would seem to be an unreasonable exercise of the police power to limit sales to the profession, without requiring anything of the profession to safeguard the public health.

[7] A police regulation for the protection of the public health will be sustained, if by any fair construction it has a tendency to effect its object. We have therefore sought earnestly for a valid reason to sustain the law, and to that end have considered the reasons advanced in the briefs of appellant and of the amicus curiæ, and have searched the statutes and the reported cases for a valid reason. We are unable to find in the statutes of this state anything which controls the sale of patent and proprietary medicines when made by pharmacists. Their right to sell such medicines seems to be unrestricted. No knowledge of their ingredients is required. We find nothing which requires druggists to warn the public against any danger in their use, or to assume any responsibility in their sale, or to do anything to protect the public in return for intrusting to them the sale of such medicines. Nor have any regulations of the Board of Pharmacy requiring anything of the druggists been called to our attention which can be said to even tend to added security of the public in buying such medicines of druggists. If the druggist does know the ingredients, he is not required to use such knowledge and need not be of any assistance; if he does not know them, he cannot be of any assistance.

Appellant says there are statutes forbidding the sale of habit-forming drugs, sections 7858-7865, R. C. 1919, as amended by chapter 191, Laws 1923, and chapter 115, Laws 1925; against the use and sale of wood and methyl alcohol, sections 7855-7857, R. C. 1919, as amended by chapter 270, Laws 1921, and chapter 115, Laws 1925, against the sale of adulterated and misbranded drugs, sections 7850-7854, R. C. 1919, as amended by chapter 238, Laws 1921, and chapter 115, Laws 1925; against the sale of pharmaceutical poisons, section 7844-7849, as amended by chapter 194,

Laws 1923, and chapter 115, Laws 1925; and against the sale of intoxicating liquor.  But all these statutes apply with equal or greater force to laymen, subjecting them to the same penalties and liabilities.  We are unable to see wherein restricting to pharmacists the unlimited and unregulated sale of patent and proprietary medicines tends to protect the public health.  Such restriction is therefore unreasonable, and not a proper exercise of the police power of the state.

The judgment appealed from is affirmed.

CAMPBELL, P. J., and GATES, POLLEY, and SHERWOOD, JJ., concurring.