Submitted on briefs October 23; affirmed November 10, 1942

## STATE *v.* COMBS
(130 P. (2d) 947)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Sims & Sims*, of Portland, *D. N. Mackay*, of Condon, and *Dewey H. Palmer*, of Portland, for appellant.

*I. H. Van Winkle*, Attorney General, *Stephen W. Matthieu*, Special Attorney General, and *George L. Dukek*, District Attorney, of Fossil, for respondent.

BELT, J. Defendant, who operates a store at Fossil, Oregon, and who is not a druggist, was convicted in the justice's court of the crime of selling a package of aspirin tablets without having obtained a permit

or license from the state board of pharmacy. It is stipulated that the defendant sold a "simple household remedy commonly known as aspirin in the original and unbroken package"—same being "a simple 5-grain aspirin". On appeal to the circuit court the judgment was upheld and now defendant appeals to this court.

Defendant asserts (1) that the legislature purports to vest the state board of pharmacy with power to exercise arbitrary discretion in the classification of articles listed in § 58-307, O. C. L. A., requiring a license for the sale thereof, and (2) that the statute is unconstitutional in that it delegates legislative functions to an administrative board without providing any rule or standard for its guidance in the classification of the drugs or medicines to be sold.

The state pharmacy act (Ch. 55, Or. Laws 1935—codified as §§ 58-101 to 58-604 inclusive, O. C. L. A.) is a complete and comprehensive enactment regulating, among other things, the manufacture, sale, and distribution of drugs and medicines in the state of Oregon. A careful analysis of the act will show that there are four general classifications for the sale of drugs and medicines, viz.:

(1) Sales which may be made only by a registered pharmacist on prescription of a registered physician, dentist or veterinarian;

(2) Sales which may be made without a prescription, but only by a registered pharmacist;

(3) Sales which may be made not only by a registered pharmacist, but also by any shopkeeper or dealer authorized by license to do so;

(4) Sales which may be made without a pharmacist's license or a shopkeeper's license.

The decision hinges largely upon the construction and effect to be given to § 15 of the 1935 act (§ 58-307 O. C. L. A.) which, so far as material herein, provides:

"In addition to the other permits authorized herein, the board of pharmacy shall issue to shopkeepers not druggists *permits to sell simple United States Pharmacopoeia, National Formulary and New and Nonofficial Remedies, substances or preparations not of a poisonous nature, in the original unbroken packages only, upon the payment in advance of an annual fee of two dollars ($2) for such permit.* Permits so issued by the board shall expire on the thirty-first day of December of each calendar year. Such remedies shall be sold under such restrictions and regulations as the board may from time to time adopt. The board likewise may include in such permits permission to sell other remedies not prohibited by law or by order of the board; provided, however, that nothing herein contained shall prohibit the sale by any person or shopkeeper of agricultural or garden spray, sheep dip, blue stone, copperas, squirrel poison, fly paper, ant poison, gopher poison, insect powder, poultry vermifuge, and arsenic sprays when the same are in original unbroken packages and prepared and labeled with official poison labels; nor shall any license fee be required from any dealer for permission to sell the following articles: Olive oil, sweet oil, glauber salts, vaseline, condition powders, cream of tartar, carbonate of soda, bay rum, essence of peppermint, household ammonia, alum, castor oil, bicarbonate of soda, chloride of lime, glycerine, borax, sulphur, tincture arnica, spirits camphor, almond oil, witch hazel, spirits nitre, epsom salts, rochelle salts, senna leaves, quinine, compound cathartic pills, camomile, caraway seed, potassium chlorate, moth balls, gum camphor, asafetida, anise seed and saltpeter and other such articles and items as may hereafter be specifically listed, enumerated and exempt from the provisions of this act by

proper order and regulation of the board of pharmacy; and providing further, that such products shall be sold in original unbroken packages only." (Italics ours.)

It is observed from the above section that a permit or license is required by a shopkeeper not a druggist to sell in original, unbroken packages, "simple United States Pharmacopoeia, National Formulary and New and Nonofficial Remedies, substances or preparations not of a poisonous nature". The legislature, however, provided therein that no license would be required for such shopkeeper to sell in original and unbroken packages certain medicines and drugs specifically listed in the act and those which might be added to such list by the board of pharmacy.

■ The United States Pharmacopoeia, National Formulary and New and Nonofficial Remedies are official publications, of which this court may take judicial knowledge. Indeed, the pharmacy act itself takes cognizance of such publications: § 58-101 (a), (b), and (c), O. C. L. A. Patent or proprietary medicines or remedies are not listed therein. Acetylsalicylic acid—commonly known as aspirin—is no longer a proprietary medicine (*State v. Zotalis*, 172 Minn. 132, 214 N. W. 766) and is recognized as a drug or medicine in the official publication of the United States Pharmacopoeia (12th ed., pp. 13, 14, and 15). Aspirin is not an entirely harmless drug or medicine, especially when taken in excessive doses. The standard dose is from five to fifteen grains. According to Wood-Lawall's United States Dispensatory: "Overdoses of acetylsalicylic acid commonly produce ringing in the ears as do the inorganic salicylates. Frequently, however, even in quantities not excessive it produces a very dif-

ferent type of intoxication. Among the most common symptoms are profuse sweating, cold extremeties, either with or without a fall in body temperature, rapid or irregular pulse and occasionally albuminuria. In many reported cases there has been marked facial edema involving not only the skin but the mucous membrane of the mouth and throat.''

█ Undoubtedly the sale of medicines is a business subject to regulation under the police power by legislation reasonably necessary to protect the public health or morals: 17 Am. Jur. 842. As stated in 28 C. J. S. 501:

"* * * the state has the authority to regulate the sale of patent or proprietary medicines, as well as the harmless household or domestic remedies, provided it adopts such measures as have a tendency to protect the lives, health, safety, and welfare of the public, and do not unjustly discriminate in favor of a certain class.''

█ The mere fact that aspirin is a simple household remedy does not preclude regulation of the sale thereof. As was well said in *State Board of Pharmacy v. Matthews*, 197 N. Y. 353, 90 N. E. 966, 26 L. R. A., N. S. 651:

"* * * there are strong reasons relative to the public welfare which make it proper that regulations concerning the sale of drugs and medicines should not be confined to poisons, but may be extended so as to embrace what are known as harmless household remedies—that is, which may be harmless if properly prepared. The injury to the public health which might ensue if such medicines were carelessly or ignorantly compounded so as to contain deleterious ingredients or deceptively, so as to be something different from what they purported to be, is manifest. The police power logically

> extends to such medicines no less than to poisons and other lethal medicinal agents.''

Of course, the regulations relative to the sale of medicines cannot be arbitrary or capricious but must have some reasonable relation to the end to be attained, viz., the protection of the public: *State v. McFall*, 112 Or. 183, 229 P. 79.

Appellant asserts in effect that he has no quarrel with the above well-recognized legal principles but contends that the board of pharmacy acted arbitrarily and unreasonably in classifying aspirin—a simple household remedy—as one which could be sold only by a duly licensed person. In other words, as we understand it, appellant says that, by thus restricting the sale of aspirin, the welfare of the public is not subserved.

■ We see no unlawful delegation of legislative authority to the board in this case. The legislature, itself, classified aspirin as a medicine which may be sold only by a duly licensed person. Its status as a drug or medicine was fixed by the legislature in view of the fact that it is a simple U. S. Pharmacopoeia and National Formulary remedy and is not within the exempted class of drugs or medicines enumerated in this act. Neither has it been shown that the board, in the exercise of its discretion, has seen fit to add aspirin to those medicines or drugs exempted from operation of the act. As a matter of fact the board, by a rule promulgated by it, has specifically required that aspirin be sold by only those shopkeepers who have obtained the required license. Such rule is merely declaratory of the statutory classification of aspirin and was wholly unnecessary. It is clear that the statute purports to make it a crime for a shopkeeper

who is not a druggist to sell aspirin without first obtaining a license.

■ The remaining question is whether the statute is unconstitutional in that the restriction relative to the sale of aspirin is arbitrary and unreasonable. We agree that if the legislation is of such character it is not a valid exercise of the police power. Under the due process clause no person can be arbitrarily or unreasonably restricted in the transaction of legitimate business.

The constitutionality of similar statutes in other jurisdictions regulating the sale of drugs and medicines has been sustained in the better-reasoned cases. In *State v. Woolworth Co.*, 184 Minn. 51, 237 N.W. 817, 76 A.L.R. 1202, the court upheld the constitutionality of an act restricting the sale of milk of magnesia—a nonproprietary medicine—to licensed pharmacists. In disposing of the contention that such restriction was arbitrary and unreasonable, the court said:

"We are not prepared to say that having a licensed pharmacist in charge of the sale of medicines, even if harmless and sold in original packages, has no reasonable relation to public health and cannot be of public benefit."

In *State v. Foutch*, 155 Tenn. 476, 295 S.W. 469, 54 A.L.R. 725, it was held that the legislature had the right to prohibit the sale of such useful household remedies as tincture of iodine except by duly licensed persons. Also see: *In re Gray*, 206 Cal. 497, 274 P. 974, and *State v. Wood*, 51 S.D. 485, 215 N.W. 487, 54 A.L.R. 719.

■■ We come to the precise question as to whether the restriction by the legislature of the sale of aspirin to licensed shopkeepers is arbitrary and unreasonable. If there is any reasonable basis which the court can

conceive for such regulation, it must be sustained as a valid exercise of the police power. Under the pharmacy act (§ 3, subd. (e)) the state board of pharmacy has power to employ inspectors to "investigate all complaints as to the quality and strength of all pharmaceutical preparations and medicines, and to take such action as may be necessary to prevent the sale of such as do not conform to the standard and tests prescribed in the latest edition of the United States Pharmacopoeia, National Formulary, or New and Nonofficial Remedies". Such inspection undoubtedly would aid in guarding against the sale of impure drugs and medicines. It would also enable the board to ascertain whether aspirin was being sold in standard doses. We think it is highly proper for the board, acting for the welfare of the public, to know who is dealing in drugs and medicines and such knowledge can best be obtained by requiring dealers to procure a license. The act does not discriminate against certain classes of shopkeepers, as all who obtain a license may sell aspirin. The grievance of the defendant— reduced to its ultimate analysis—is that the board failed to add aspirin to the list of drugs and medicines exempt from the operation of the act.

We conclude that there is a resonable basis for legislation requiring shopkeepers to have a license before selling such drugs or medicines as such regulation of the sale thereof tends to promote the public health.

The judgment is affirmed.