In the Matter of LYMAN WHITE, Petitioner, against STATE BOARD OF PHARMACY, Respondent.

Third Department, March 9, 1955.

*John D. Frawley* for petitioner.

*Jacob K. Javits, Attorney-General (Henry S. Manley* of counsel), for respondent.

BERGAN, J.  The sale of " drugs " at retail is made a misdemeanor by the Education Law (§ 6804, subd. 3, par. c) unless under the " immediate personal supervision of a pharmacist or druggist ".  The same section of the statute (subd. 3, par. b), makes it unlawful for any person to dispense " drugs " at retail unless as allowed by law — an exception generally in favor of licensed pharmacists.

The statutory meaning of the word " drugs " sweeps a wide arc, described within the inclusive definitive terms of subdivision 14 of section 6801, to include not only " Articles recognized " by the official United States pharmacopoeia, but all " Articles intended " for use in connection with treatment of disease or to affect any structure or function of the body.  A pertinent exception to the prohibition against the retail sale of drugs appears in subdivision 2 of section 6816.  This provides (par. c) that the prohibition shall not apply " To the sale of proprietary medicines ".

This proceeding by the petitioner, who is a storekeeper and not a pharmacist and who does not bring himself within the other permissive terms of the statute, is to review a determination made by the State Board of Pharmacy imposing penalties. Authority to penalize violations of article 137 of the Education Law regulating pharmacy is vested in the board (§ 6823, subd. 2).  The first charge was that petitioner had sold to an inspector of the Board of Pharmacy a tube of zinc oxide ointment.  It was manufactured by the Norwich Pharmacal Company and sold by petitioner in the tube in which it had been prepared and the tube contained the name of the manufacturer.

The sale itself is not disputed and we have no difficulty in holding that zinc oxide ointment is a " drug "; not merely because of its listing in the pharmacopoeia, but because it readily falls within the class of " articles " intended for the treatment of disease or to affect a structure or function of the body (§ 6801, subd. 14).

It is argued, however, that since it is sold under the name of its pharmacal manufacturer in the container in which it was prepared, it must be treated as a " proprietary medicine " and thus be excluded by section 6816 (subd. 2, par. c) from the prohibitions of the article in relation to the retail sale of " drugs ".

A medicine in general use, the ingredients of which are the common property of pharmacists or pharmacal manufacturers, is not a " proprietary medicine " in the sense the statute uses that term. The name of the manufacturer on such a medicinal product also made by others or compounded by pharmacists generally does not transmute the medicine into a " proprietary medicine " within the scope of the statute.

The manufacturer has the right, of course, to control its name on the product it makes. It is in this sense the proprietor of the product made by it and sold under its name — but this kind of a product is not thereby rendered a " proprietary medicine " within the meaning of the statutory exception.

Many medicines that have had general public usage for long periods of time, of commonly known ingredients and put together by pharmacists as well as pharmacal manufacturers, are presently sold in packages under the names of the people who make them. They are not regarded as " proprietary medicines " in the meaning that term has acquired with usage. Zinc oxide ointment, we think, is not different.

There are other combinations and formulas which are so distinctively or exclusively attributable to their producers as to be regarded as specially the maker's own kind of medicine. Some of these may be " proprietary medicines " if set off distinctly enough. We need not go further here than to say that we regard the zinc oxide ointment put into a tube by the pharmacal manufacturer and sold by the petitioner as not being a " proprietary medicine ".

There are, no doubt, borderline medicines which are not easy to classify but this is not one of them. One aspect or another of the problem may be seen in *People* v. *Bernstein* (237 App. Div. 270); *Ferguson* v. *Arthur* (117 U. S. 482); *People* v. *Heron* (34 Cal. App. 2d 755); *State* v. *Ridgeway Drug Co.* (324 Ill. App. 585); *Wrigley's Stores* v. *Board of Pharmacy* (336 Mich. 583);

*Culver* v. *Nelson* (237 Minn. 65); *State* v. *Wakeen* (263 Wis. 401), and *State* v. *Zotalis* (172 Minn. 132).

We see no undue delegation of legislative power by the statute's reference to the pharmacopoeia for definition of " drugs ", because this additional definitive criteria of the statute is supplementary to and in aid of an acceptance of the word as commonly understood.

.The second charge which was sustained by the board under appropriate findings is that the petitioner violated section 6804 (subd. 3, par. b). This constitutes it a misdemeanor to refuse to permit an inspector to enter a pharmacy or other establishment for the purpose of lawful inspection. The board found that the inspection when demanded had been " refused to said inspector " by the petitioner. A separate penalty was imposed, based upon this additional and separate violation as found.

The constitutional power of the Legislature to require the allowance of inspection on demand of a pharmacy examiner as to " any other establishment " at the risk of misdemeanor is challenged by petitioner. We have no doubt that the Legislature could not commission an inspector to examine into anyone's private business or establishment without good cause shown.

The words of the statute include the right in respect to a pharmacy or drugstore, which as premises licensed by the State would usually be regarded as subject to reasonable inspection. The additional words, coupled with " pharmacy " and " drugstore ", i.e., " or any other establishment ", would usually mean an establishment whose business or practice in some way becomes relevant to pharmacy or drug regulation. The words " or any other " are not to be isolated, under the usual canons of construction, from the preceding words relating to pharmacy and the sale of drugs.

We do not suppose this would allow a pharmacy inspector to rove at will into gasoline stations or dry goods stores, but where there is a reasonable prompting to make an inspection based on relevant observations or events, the statutory imposition of a misdemeanor for intentional refusal to permit the inspection seems justified. It would be enough usually to show, in justification of the right to inspect, some probable cause to believe drugs were being kept for uses on the premises in violation of the statute. ·

We do no more here than say that when the inspector had bought a drug in the petitioner's store he was justified in inspecting it further; he thereupon had both a cause for inspection and subject matter relevant to his duty. The petitioner's statement

that he would allow the inspection if the inspector gave him a list of articles he could not sell is not impressive justification for preventing the inspection. To impose a condition on a public duty, which the officer need not accept, is to interfere with the duty. At least the board could have looked at it that way in hearing the charges.

The petitioner was given a full notice of the charges required by the statute and by procedural due process and appeared at the hearing. The determination was within the statutory powers of the board; its conclusion is not unreasonable and should be confirmed.

FOSTER, P. J., COON, IMRIE and ZELLER, JJ., concur.

Determination confirmed, without costs. [See *post*, p. 1194.]