Van Voorhis, J.
This action, for declaratory judgment and an injunction, concerns whether Bayer Aspirin Tablets can be sold in New York State in plaintiff’s supermarkets, o;r whether they are required by the ‘ ‘ Pharmacy ’ ’ article of the Education Law (art. 137) to be dispensed only at pharmacies, drugstores or registered stores (Education Law, § 6805, subd. 1) by or under the immediate supervision of licensed pharmacists or druggists (id., § 6804, subd. 3, par. c). Excepted from these provisions are sales of “ proprietary medicines except those proprietary medicines which are poisonous, deleterious and/or habit forming ’ ’ (id., § 6816, subd. 2, par. c).
The decision of this appeal depends upon whether Bayer Aspirin Tablets are a proprietary medicine within the meaning of this exception to the application of the ‘ Pharmacy ’ ’ article of the Education Law. Coneededly aspirin is a drug, but at Special Term defendants disclaimed any contention that it is poisonous, deleterious or habit forming. Consequently no such issue as that can be resurrected upon this appeal (Grade Sq. Realty Corp. v. Choice Realty Corp., 305 N. Y. 271, 278; Lloyd v. R. S. M. Corp., 251 N. Y. 318, 320).
Aspirin as such is not a proprietary remedy. It is true that during the life of the Bayer patent which expired in 1917, Bayer Co., Inc. (predecessor of Sterling Drug, Inc.) manufactured all of the aspirin which was consumed in this country. It was sold in powdered form to other manufacturing druggists, during most of this period, who merchandised it in tablets under their own various trade names. After the patent expired Bayer Co., Inc., sought to establish a monopoly on sales under the trade name “ Aspirin ”, but was defeated in Bayer Co. v. United Drug Co. (272 F. 505) on the ground that Bayer Co., Inc., had allowed the name “ Aspirin ” to go into the public domain *107 during the life of the patent by countenancing sales of the drug to the public by other manufacturing druggists under their own trade names. In that case it was held, however, that Bayer Co., Inc., owned a property right in the name “ Bayer ”, and that the use of words by competitors would be enjoined which indicated or implied that the product had been prepared by Bayer. That decision has no bearing upon the present controversy except that it does signify that Sterling Drug, Inc. (successor to Bayer Co., Inc.) would be protected in the exclusive use of the name “ Bayer Aspirin Tablets ”. It does not decide whether or not Bayer Aspirin Tablets are a proprietary remedy. Nobody disputes now that the word “ Aspirin ” has become a generic term that has passed into the public domain, but that does not determine whether prepackaged, nonprescription drugs (not poisonous, deleterious or habit forming) sold under the name of the same manufacturer who was once protected by patent rights have ceased to be a proprietary medicine because the patent has expired, nor whether drugs must be or have been protected by patent in order to constitute proprietary medicines.
The main inquiry on this appeal was thus posed by Justice Goldman in his dissenting opinion at the Appellate Division: “ Does this fact [that the patent has expired] standing alone make the sale of such a product by businesses other than registered pharmacists evil whereas for 17 years before, when protected by patent, the law sanctioned its distribution by sources other than druggists? If so, why? Surely, no reasonable answer would be that the limited definition of the word ‘ proprietary ’ requires it.” In Matter of Viemeister (179 N. Y. 235, 238) it was held that “ A statute entitled a health law must be a health law in fact as well as in name, and must not attempt in the name of the police power to effect a purpose having no adequate connection with the common good.” The public health will not be used as a pretext to aid one group in the community in the competitive race against another or to confer a monopoly in the sale of products (Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537; Good Humor Corp. v. City of New York, 290 N. Y. 312; Trio Distr. Corp. v. City of Albany, 2 N Y 2d 690; Hauser v. North British & Mercantile Ins. Co., 206 N. Y. 455, 461—462).
*108 In answer to the reasoning that the expiration of a, patent on a drug has no relation to the public health, so as to warrant invoking the police power in regulating sales of the product, the Pharmaceutical Society of the State of New York, Inc., appearing amicus curias, has argued that 11 Bayer Aspirin Tablets ” never, were a proprietary medicine within the meaning of the “ Pharmacy” law, basing this position on the decision in Bayer Co. v. United Drug Co. (supra). The State Education Department and Board of Regents make no such contention, which is not borne out by the case cited. No one questions that the patent Avas valid, nor that Bayer Co., Inc., was entitled to sell “Aspirin” exclusively, in the form of Bayer Aspirin Tablets or otherwise, before the patent expired. Moreover, the name of “ Bayer ” was held not to have passed into the public domain in the cited case, so that it is authority for holding that the name of “ Bayer ” is the property of Bayer Co., Inc., or its successor corporation. If the cited case had dealt with what is a proprietary remedy, as the Pharmaceutical Society appears to consider that it did, then it Avould be authority for holding that tablets sold under the name of “ Bayer ” are a proprietary remedy. But the issue of what constitutes a proprietary remedy was not before that court which decided trade-mark or unfair competition questions only. There was no occasion to rule on whether the ownership of a trade name attached to a nonprescription drug of particular manufacture would be sufficient to constitute it a proprietary medicine under the statute now under consideration. Sale under a trade name is one of the factors to be considered in determining whether a drug is a proprietary medicine.
No statutory definition is given of what constitutes a proprietary medicine. Two definitions have been formulated, the so-called “common usage” definition and the “technical” definition. The leading case in the country in which the common usage definition was applied is Wrigley’s Stores v. Board of Pharmacy (336 Mich. 583). Five requirements are there set forth to bring the sale of a drug within that definition, viz.: (1) a medicine in which a property right exists in the producer and which the public buys in reliance primarily on the producer or the proprietor and not the retailer, (2) the property right may be attributed to a patent, trade-mark, special formula or unique process for preparation, (3) distribution is in prepack *109 aged and fully prepared form ready for use by the consumer with adequate directions for use, (4) extensive advertising by brand name so that the public relics on the name, (5) no prescription is needed.
The “technical” definition is somewhat narrower, and requires, in addition, that there be secret processes of manufacture in order to come within the definition. Neither of these definitions requires that the medicine shall be patented. Appellant contends that Bayer Aspirin Tablets are within both of these definitions of what constitutes a proprietary medicine. The Appellate Division majority did not apply either of these definitions. Instead, it established its own criterion, which rejects the common usage definition and goes beyond the technical definition by denying the existence of a proprietary right without regard to the ownership of trade-marks or secret processes of manufacture if the “ basic and essential elements are known to, and freely used by the public” — i.e., the composition of the drug as described in the United States Pharmacopeia. Inasmuch as the active elements of all drugs of this nature are required by law to be made public, the holding of the Appellate Division is equivalent to a determination that no proprietary medicine can be recognized except patent medicines while the patents are outstanding. Appellant contends that the expiration of a patent changes neither the ingredients, methods of manufacture nor the sales procedures of prepackaged, nonprescription drugs under their brand names, without opportunity for inspection or analysis by the pharmacist, and that such goods are bought on the reputation of the manufacturer but not of the retailer regardless of whether the patent has expired (Old Dearborn Co. v. Seagram Corp., 299 U. S. 183; Bourjois Sales Corp. v. Dorfman, 273 N. Y. 167). The object of the statute as construed by appellant would be similar to that of subdivision 4 of section 96 of the Personal Property Law in regard to implied warranties of fitness which states that ‘1 In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose ” (italics supplied). A legislative policy was thus enunciated that the rigor of the law of implied warranty is to be mitigated where the retailer has, in truth and in fact, assumed no real responsibility for the *110 fitness for the intended purpose of the goods being sold. The evidence is to the effect that when sold in drugstores or pharmacies prepackaged aspirin tablets are ordinarily sold by clerks or other employees without comment concerning their qualities or effects. It appears that Bayer Aspirin Tablets are now sold in non-drug outlets in 46 States and in the District of Columbia, and that a majority of all retail sales are made through non-drug outlets. Over five and one-half billion Bayer Aspirin Tablets were sold in 1958 in the United States and twenty-nine billion aspirin tablets of all varieties. In New York State, plaintiff started selling Bayer Aspirin Tablets in its supermarkets about 1950, and this practice was first questioned by Board of Pharmacy inspectors in 1955. Bufferin, Anacin and Alka Seltzer, aspirin products, have been sold without interference from the Board of Pharmacy in variety, grocery, department and general stores.
There can be no doubt that Bayer Aspirin Tablets comply with the common usage definition of a proprietary medicine in the five respects which have been enumerated above. We consider that they likewise possess the characteristics of a proprietary medicine under the technical definition in that, although the active ingredients are all published in the United States Pharmacopeia, the inert elements and complicated processes of manufacture are trade secrets. These, the detailed facts concerning which appear in the record, unquestionably give to Bayer Aspirin Tablets certain individual qualities differing in some degrees from those possessed by other aspirin tablets. These trade secrets do affect, for better or worse, such items as the freedom from impurities and rate of taking effect of the tablets as well as their degree of effectiveness.
In deciding this appeal it is not necessary to state an all-inclusive definition of proprietary medicines. It is sufficient to note that here we are dealing with a drug which is not poisonous, deleterious or habit forming, sold without prescription under the brand name of the manufacturer on which the public chiefly relies in making purchases, in prepackaged form ready for use by the consumer with adequate directions for use and which has been prepared through the use of inert elements and secret processes of manufacture which affect its quality. The magnitude of the investment by Bayer Co., Inc., and its successor *111 Sterling Drug, Inc., in quality production, advertising and marketing is not questioned, which has built up the element of value in the property right in the name of 1‘ Bayer ’ \ Limiting the sale of such medicines to pharmacists or drugstores would furnish no protection to the public without some further mandatory direction as to inspection or analysis by the pharmacist or druggist which would tend to exclude from sale those that might be injurious to health, or some requirement to exercise their skill and science in determining the quality and properties of such as they sell (State v. Donaldson, 41 Minn. 74, 81). The Supreme Court of Minnesota said in the case last cited: “ The articles might as well be sold by a grocer or dry-goods merchant. Undoubtedly the state has as much right to regulate the sale of patent medicines as any other; and, in the exercise of that power, may adopt any measures they see fit, provided only they adopt such as would have some tendency to accomplish the desired end, to wit, the protection of the lives and health of the public. This is the extent and limit of their power. ’ ’
The Minnesota court added: “But, because it was deemed either impracticable or unnecessary to regulate the sale of patent or proprietary medicines, of the acts of nearly 30 states or territories regulating the practice of pharmacy (all so nearly alike as to suggest a common source) which we have examined, every one, unless ours be an exception, expressly excepts the sale of patent or proprietary medicines from its operation. ’ ’
The Legislature has undoubted power to regulate the manufacture or sale of drugs, including proprietary medicines, in respects which are related to the public health (State Bd. of Pharmacy v. Matthews, 197 N. Y. 353). Bayer Aspirin Tablets are manufactured under the Federal Food, Drug and Cosmetic Act, under which they are characterized as over the counter, nonprescription drugs. Manufacturers are obliged to comply with all of the requirements of that law for such drugs (U. S. Code, tit. 21, § 353, subd. [b]). State Bd. of Pharmacy v. Matthews (supra), in holding that the Legislature was empowered to regulate the manufacture and sale of drugs generally, decided a different question from whether constitutional law required proprietary medicines to be excepted from sales regulations of this nature, a question on which we do not pass, but which was held to be the case in State v. Childs (32 Ariz. 222); *112 State v. Donaldson (41 Minn. 74, supra); Noel v. People (187 Ill. 587); State v. Wood (51 S. D. 485); Pike v. Porter (126 Mont. 482); State v. Geest (118 Neb. 562); contra: Board of Pharmacy v. Lane (248 N. C. 134); State v. Combs (169 Ore. 566), or what constitutes a proprietary medicine under an exception such as is contained in our New York statute. It is stated in the brief for the Board of Pharmacy and the Education Department of the State that doubt would have been thrown on the constitutionality of the statute if the exception of proprietary medicines had not been created (respondents’ brief, p. 21). Counsel stated that this exception originated from the unwillingness of pharmacists and druggists to be cast in damages on account of the sale of proprietary medicines which had been purchased in reliance upon the reputation of the manufacturer. We consider that Bayer Aspirin Tablets fall within this exception under the circumstances disclosed by this record on appeal. The only decisions in this State are not directly in point (People v. Bernstein, 237 App. Div. 270; Matter of White v. State Bd. of Pharmacy, 285 App. Div. 486). Language is used in the opinion in Bernstein which, although not strictly necessary to the decision, points toward the inclusion of such drugs as proprietary medicines. Language in the opinion in the White case, likewise not directly in point, might be construed as leading to a different conclusion. Most of the cases in other States support the view that Bayer Aspirin Tablets are a proprietary medicine (Wrigley’s Stores v. Board of Pharmacy, supra; Noel v. People, supra; People v. Ridgeway Drug Co., 324 Ill. App. 585; Kentucky Bd. of Pharmacy v. Cassidy, 115 Ky. 690; State v. Cramer, 95 Ohio App. 493; People v. Heron, 34 Cal. App. 2d 755). To the contrary have been cited Proprietary Assn. v. Board of Pharmacy (16 N. J. 62); State v. Red Owl Stores (253 Minn. 236, and decision following retrial February 9, 1962); State ex rel. Missildine v. Jewett Mkt. Co. (209 Iowa 567); State v. Wakeen (263 Wis. 401), and State v. Combs (169 Ore. 566, supra). These last-cited cases are less adverse* than they may seem to the view that we are here concerned with a proprietary medicine. The New Jersey case (Proprietary Assn. v. Board of Pharmacy) involved discretionary refusal to assume jurisdiction to enter a declaratory judgment regarding what are proprietary remedies generally. When the question of *113 Bayer Aspirin Tablets came specifically before the New Jersey Court at nisi prius the Camden County District Court held in Board of Pharmacy v. American Stores Co. (Action Nos. 31507-31512, Oct. 19, 1955, Martino, J.) that Bayer Aspirin Tablets are a proprietary remedy. The minutes of the 1915 Convention of the American Pharmaceutical Society are quoted in its memorandum opinion indicating that a proprietary medicine includes advertised brands of a nature such as to come within the common usage definition that has been mentioned above. The Essex County District Court held to the same effect in Board of Pharmacy v. Harootunian (Action No. 91201, May 16, 1951, Masucci, J.). In Iowa the Missildine case was overruled by an amendment to the statute so as to define proprietary medicines in accordance with the common usage definition, in consequence whereof the Supreme Court of Iowa later held that Missildine' was no longer the law (State ex rel. Board of Pharmacy Examiners v. McEwen, 250 Iowa 721).
An affidavit interposed by the Education Commissioner of New York State avers that without the economic advantage of having a monopoly on sales of drugs of this nature in pharmacies and drugstores, recruitment of students of pharmacy would suffer for lack of financial rewards in view of the long training required of them. This is not a factor related to the public health, and does not bear upon the construction of the statute concerning what is a proprietary remedy. The other reason assigned by the Education Commissioner for confining such sales to drugstores and pharmacies is that purchasing aspirin there has a psychological effect on customers who might 6 ‘ lose the respect for the potential of drugs ” if aspirin were bought in supermarkets. Concerning this Special Term commented correctly that it is common knowledge that most drugstores are engaged in a wide field of merchandising having no connection with drugs, and that no professional judgment or discrimination is required or used in making sales of Bayer Aspirin Tablets. The opinion at Special Term added that such aspirin tablets are sold to a great extent even in drugstores on a self-service basis, and that the Legislature was not to be deemed to have intended to confer a monopoly upon them on economic grounds in the retail sales of prepackaged medicines sold without prescription.
*114 It may be noted that this product falls within the American Medical Association’s definition of a proprietary medicine according to Borland’s Dictionary (23d ed., 1957, p. 1113).
We believe the purpose of the Legislature in enacting this exception of proprietary medicines to have been to exempt pharmacists from the responsibilities otherwise imposed upon them by the language of the article in case of prepackaged, nonprescription drugs (not poisonous, deleterious or habit forming) prepared under Federal or State law by responsible manufacturers and sold under their brand names without opportunity for inspection or analysis by the pharmacist.
The judgment appealed from should be reversed, and the judgment at Special Term reinstated, with costs in this court and in the Appellate Division.
Chief Judge Desmond and Judges Dye, Fuld,. Feoessel, Burke and Foster concur.
Judgment reversed, etc.